## Chissom and Others *v.* Hawkins.

Replevin for 1,700 bushels of corn. The corn was raised by one *Wright,* upon land held by him of the plaintiff below by the following lease: "This article of agreement made, &c., between *James Hawkins* and *Lewis Wright,* of, &c., witnesseth that the said *Hawkins* has this day rented to the said *Wright* the farm on which he now lives, consisting of one hundred acres of tillable land, and twenty-five acres of pasture land, for which the said *Wright* agrees to pay to said *Hawkins* sixteen bushels of corn per acre for the tillable land, and for the pasture land he agrees to pay one hundred bushels of corn—making, in all, one thousand seven hundred bushels, which corn is to be husked and cribbed in good order. * * * The said *Wright* agrees that the said *Hawkins* shall hold the crop as security for the payment of the rent, claiming no right to sell, remove, or in any way dispose of, any part of the crop, until the rents are paid," &c. *Wright* having raised a crop of corn, sold it to one *Ford,* he having notice of the lien for rent. *Ford* sold it to *E.* and *F.,* who had not such notice.

*Held,* 1. That the property in the corn raised by *Wright* was in him, and did not by virtue of the latter clause of the lease, vest in *Hawkins.*

2. That the contract was entirely executory—the crop having no existence at the time, the title thereto did not pass, and *Wright* might sell it without the consent of *Hawkins,* so as to vest a good title in the purchaser, at least if such purchaser had no notice of *H.'s* claim.

3. But *H.'s* claim might, perhaps, be enforced against all persons having notice of it.

APPEAL from the *Tippecanoe* Circuit Court.

WORDEN, J.—This was an action of replevin by the ap-

pellee against the appellants for one thousand seven hundred bushels of corn. The complaint charges that the defendants unlawfully, and without right, detain from the possession of the plaintiff one thousand seven hundred bushels of corn in the crib now upon land heretofore owned by said *James Hawkins, Eli Hawkins*, and *William Hawkins*, and farmed during the season of 1856 by one *Lewis Wright*, which corn is the property of the plaintiff, and to the possession of which he is lawfully entitled, &c.

The defendants answered—1. By a general denial; 2. That the property was in said *Fowler* and *Earl*, and not in the plaintiff.

There was a trial by jury, which resulted in a verdict and judgment for the plaintiff, a motion for a new trial being overruled.

It appears by a bill of exceptions, that the corn in question was raised by said *Lewis Wright*, on land held by him of the plaintiff, by the following lease, viz:

" This article of agreement made, &c., between *James Hawkins* and *Lewis Wright*, of, &c., witnesseth that the said *Hawkins* has this day rented to the said *Wright* the farm on which he now lives, consisting of one hundred acres of tillable land, and twenty-five acres of pasture land, for which the said *Wright* agrees to pay to said *Hawkins* sixteen bushels of corn per acre for the tillable land, and for the pasture land he agrees to pay one hundred bushels of corn—making, in all, one thousand seven hundred bushels, which corn is to be husked and cribbed in good order. * * * The said *Wright* agrees that the said *Hawkins* shall hold the crop as security for the payment of the rent, claiming no right to sell, remove, or in any way dispose of, any part of the crop, until the rents are paid," &c.

*Wright*, having raised a crop of corn on the premises, sold it to one *Amos Ford*, or at least his, *Wright's*, interest in the crop, *Ford* having notice of *Hawkins's* lien on the crop for the rents. *Ford* sold the entire crop to *Fowler* and *Earl*, who do not appear to have had any notice. There is, perhaps, a little discrepancy in the testimony as to the extent of the sale made by *Wright* to *Ford*. The

sale was by the bushel, at a price fixed per bushel; but whether the entire crop was sold, or only the interest of *Wright* in it, is a point on which the testimony is not harmonious.

The defendants asked several charges; but we deem it unnecessary to notice them, as the main question raised by them is involved in the charges given by the Court, to which they, at the proper time, excepted.

The charges given by the Court are as follows, viz.:

1. "If the jury believe from the evidence that the corn in question was raised by *Wright* on the land of *Hawkins*, and remained there at the commencement of this suit, under the lease which has been read in evidence, the plaintiff could not be deprived of the corn without his consent, by any sale of *Wright's*, and if no such consent has been given by the plaintiff, you should find for the plaintiff."

2. "If the jury believe from the evidence that the plaintiff consented or agreed that *Wright* might sell, or that *Ford* might buy and take away the corn, and that he would look to *Ford* for the rent, then you should find for the defendants."

3. "The lease is a reservation of the possession of the rent corn to the plaintiff, and he cannot be deprived of it without his consent."

It may be observed that, by the terms of the lease, *Wright* was to pay as rent one thousand seven hundred bushels of corn; but not necessarily the specific corn that he might raise on the premises. That amount he was to pay, whether he raised it or not, and the payment of that amount, either in corn raised on the premises, or otherwise procured, would have discharged his contract.

We are of opinion that the property in the corn raised by *Wright* on the premises was in him, and did not, by virtue of the clause in the lease providing that· *Hawkins* might hold the crop as security for the payment of the rent, vest in *Hawkins*. In order to constitute a valid sale, so as to vest the title in the purchaser, the thing sold must have an actual or potential existence, and be capable of delivery—otherwise it is not strictly a contract of sale, but

a special or executory agreement. 2 Kent's Comm. 468.
At page 504 [*id.*] it is said that, "If the subject-matter of
the contract does not exist *in rerum natura*, at the time of
the contract, but remained to be thereafter fabricated out
of raw material, it is consequently incapable of delivery,
and not within the statute of frauds; and the contract is
valid without a compliance with its requisitions. The
case rests entirely on contract, and no property passes
until the article is finished and delivered."

So, in the case at bar, the contract was entirely execu-
tory in its character, the crop having no existence at the
time of the contract, and the title thereto not passing to
*Hawkins*. The contract was of such a nature as would
subject *Wright* to an action for a breach, if he should vio-
late its provisions, but not such as divested him of the title
to the crop to be raised.

It follows that if the title was in *Wright*, he might sell
the crop without the consent of *Hawkins*, so as to vest a
good title in the purchaser, at least if such purchaser had
no notice of *Hawkins's* claim.

The instructions given we think erroneous, as they as-
sume that the consent of *Hawkins* was necessary to give
validity to any sale that might be made by *Wright*.

Although we are of opinion that the lien acquired by
*Hawkins*, by virtue of the lease, did not divest *Wright's*
title to the crop so as to prevent him from making a valid
sale to a third person, yet we do not decide that it was not
such a lien as might be enforced against all persons hav-
ing notice of his claim.

In a note to Smith's Mercantile Law, p. 693, it is said
that "Liens are sometimes recognized and protected in a
Court of equity, which a Court of law would not regard.
For while at law the general rule seems to be that a grant
or assignment is not valid unless the thing which is the
subject of it has an existence actual or potential at the
time of such grant or assignment, and that a mere possi-
bility is not assignable; yet in equity, it has been stated by
an eminent judge to be a clear result from all the authori-
ties, that whenever the parties, by their contract, intend to

create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor, or not, or, if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto under him, either voluntarily, or with notice, or in bankruptcy. STORY, J., in *Mitchell* v. *Winslow*, 2 Story R. 630, 638, 644, and cases there cited."

All distinctions being abolished between proceedings at law and in equity, probably, if the above doctrine be correct, the plaintiff could assert his claim to the property in this action, and if *Ford*, and also *Fowler* and *Earl*, were purchasers with notice, he could recover.

But the charges given took all questions of notice from the jury, and placed the case upon the ground that *Wright* could not make a valid sale without the consent of the plaintiff.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*R. C. Gregory, H. W. Chase,* and *J. A. Wilstach,* for the appellants.

*W. C. Wilson* and *G. Gardner,* for the appellee.