No. 11,295.

THE CHICAGO AND WEST MICHIGAN RAILWAY COMPANY
*v.* LINARD.

LANDLORD AND TENANT.—*Growing Crops.*—*Trespass.*—Where there is a lease for years, rent to be paid by delivery to the landlord of a certain share of the crops when mature, the crops while growing and before delivery are the property of the tenant, and he can maintain suit for trespass thereto even against one who purchases the land from the landlord.
SAME.—*Railroads.*—In such case, a grant by the landlord to a railroad company is no defence to a suit by the tenant for injury to crops growing on the lands so granted.

From the Laporte Circuit Court.

*J. Bradley* and *J. H. Bradley,* for appellant.

*F. Church,* for appellee.

ZOLLARS, J.—The appellee, in his complaint, filed on the 9th day of April, 1883, alleges, in substance, that on or about the 1st day of June, 1882, he was lawfully in possession of the land therein described, and was farming the same, and was the owner and had growing thereon a large quantity of corn, pumpkins and cornstalks, of great value; that the appellant was a railroad corporation duly organized and engaged in the construction of a railroad from the city of Laporte to Lacrosse in Laporte county, and that at the time mentioned, and at sundry times thereafter, the appellant wrongfully entered upon the said premises so in possession of the appellee, and being worked and farmed by him, and proceeded to locate and construct a railroad over and upon said premises, and destroyed and converted to its own use the crops thereon planted and growing on about twelve acres of the land so occupied by the appellee, of the value of $200, to the damage of the appellee, etc.

The appellant answered in two paragraphs. The first paragraph is a general denial.

The second paragraph alleges that at the time of the entry upon the land, one Charles F. Wells was the owner of the

land and in possession of it; that the appellant was engaged in the construction of a railroad as stated in the complaint, and located its railroad on and across the said land, and desired and intended, for the purpose of constructing and forever maintaining its railroad, side tracks, " Y " tracks and depots thereon, to appropriate so much of the said land as it lawfully might, and with the consent and under a parol license of the said Charles F. Wells, which had never been revoked, entered upon and appropriated that part of said lands particularly described in a deed of conveyance by the said Wells to the appellee, a copy of which deed is filed with. and as a part of the answer; that with said consent and under said license, the appellant took possession of said land so described in said deed, and constructed its said railroad and appurtenances on the same, and has ever since been in possession of the same, and is now operating its railroad thereon, and did afterwards agree with said Wells upon the amount of compensation to be paid to him for the land so appropriated and taken and damage done, and paid the same to him in full, and thereupon the said Wells executed and delivered to the appellant the said deed of conveyance, which is dated on the 11th day of July 1882, and that they intended and agreed that the same should have relation to, and take effect from that date, and that the appellant did not commit any damage nor destroy any crops upon any part of said land other than the said parcels described in the said deed.

The issues were closed by a reply of general denial. There was a trial by the court, and a judgment for appellee. The motion for a new trial, on the ground that the finding is not sustained by sufficient evidence, and is contrary to law, was overruled. Appellant excepted, and prosecutes this appeal.

Omitting the portion in relation to the amount of damages, appellee's testimony was as follows:

" I was in possession of the land taken, at the time it was taken. I took the land upon which my crops were growing, that were destroyed by the Chicago and West Michigan Rail-

way Company, of Charles F. Wells, to work on shares. I was to give him one-half of all the corn raised, delivered on the place in the crib, and one-half of all the wheat raised in the half bushel. I did not live on the premises. The railway company took about ten or eleven acres of this land which was planted in corn. Part of it was taken in May or June, and the rest in August of the same year. * * * These crops were all taken or destroyed by the agents or servants of the railway company without my consent. The company entered upon the land without my consent. The company did not ask my consent, and I have never been paid for the damage."

On cross-examination the witness said: " I rented the land about two years before. The land is owned by Charles F. Wells, and was when the railway company entered upon it. I made the bargain with Theodore Wells, a brother of Charles F. Wells, who resided at Wellsboro, and is the agent for the Grand Trunk and the Baltimore and Ohio Railroads at that place. He was the agent for his brother, and had authority to let the land. I rented the land for six years to work on shares. I was to give the owner one-half of all the crops raised, and I was to have the other half. Wells's half was to be delivered to him, the corn in the crib on the place, and the wheat in the half bushel. I did not live on the place. There is no house on the place. The contract I made for the place was in writing. It never was recorded in the recorder's office of Laporte county. I have not got it with me. I do not know where it is. Have not seen it since it was written."

The appellant produced Edward Hawkins, who was sworn, and testified as follows: " I was acting as the agent for the Chicago and West Michigan Railway Company in 1882, in buying the right of way ; the land farmed by Linard belongs to Charles F. Wells; I am acquainted with Theodore Wells; he claimed to be acting for his brother Charles F. Wells, the owner of the land in controversy; I entered into negotiations

The Chicago and West Michigan Railway Company *v.* Linard.

for the purchase of the right of way for the railroad company; he said that they did not want the land condemned; that the company might go on and construct their road without condemnation proceedings being first had, and that the price to be paid could be agreed upon afterwards."

Theodore Wells, called by the appellant and sworn, testified as follows: "I am the brother of Charles F. Wells, the owner of the land that Linard farmed; Linard had the land on shares; he was in possession of the same; I let him have it as the agent of my brother; I gave the defendant company permission to construct its main track across the land, but said that they must pay Linard for his crops; I had a general power of attorney from my brother in relation to this land; have sold some parts of it and made deeds for it; the power of attorney has never been put upon record; I have not got it with me."

Appellee also introduced in evidence the record of condemnation proceedings. These proceedings were instituted in August, 1882. On exceptions filed by Wells, an appeal was taken to the circuit court. The proceedings were dismissed from that court in February, 1883. To this proceeding appellee was not a party. Appellant introduced a deed from Wells to the railroad company for the land taken and occupied by it. The deed bears date of July 11th, 1882. It was acknowledged on the 6th day of January, 1883. According to the averments of the answer, it was executed on this latter day, but by agreement of parties was to have effect as of the 11th day of July preceding.

The contention on behalf of appellant, as we understand counsel, is, that, as shown by the evidence, appellee was not in possession of the land as a tenant, but that his possession was the possession of the owner of the land; that appellee's interest was in and attached to the crops only, and that hence he can not maintain this action, which is in the nature of an action *quare clausum fregit.* In this contention they say:

"We claim that the evidence does show either that the ap-

pellee was, in relation to the crops raised, a tenant in common with the owner, having no right to claim any particular part of the crops until they were divided, or that he was the servant of the owner, having no right to any part of the crop as a compensation for his services until the same was delivered to him."

The contention further is, that as appellee is only a tenant in common, as above contended, he can not maintain this action alone, that the owner of the land should be joined with him, and, further, that the deed executed by the owner of the land operated as a release of all damages, and was conclusive upon appellee as a tenant. in common of the growing crops.

We can not concur with counsel in this contention. It can not be said that appellee was a mere cropper. The evidence shows that two years prior to appellant's entry upon the land, appellee went into possession of it under a lease from the owner for a term of six years, and that he was in the open possession of it when the company entered thereon. Such being the case, he was entitled to hold and protect that possession against appellant and all others. Having given the lease, and put appellee into possession under it, the owner of the land could not destroy the lease nor the right of possession under it, by a subsequent conveyance to the railroad company. Appellee had the right of possession against the lessor and his grantee with knowledge of appellee's rights. Having been thus put into possession under a written lease, it will not do to say that appellee's possession was the possession of the lessor.

The evidence makes it sufficiently clear that it was intended and understood by the contracting parties that the relation created by the lease should be and was that of landlord and tenant. It is equally clear that the portion of the crops that was to go to the landlord was to go to him as rent for the use of the land. To say the least, the evidence tends to show this. The letting was not for one season alone, but for six years  If other distinguishing elements were lacking,

this would distinguish the case from those holding that a letting on shares for one season is not a lease. These cases, however, have not been approved to their full extent by this court. See *Woodruff* v. *Adams*, 5 Blackf. 317 (35 Am. Dec. 122). Upon the evidence as presented in the record, we think that appellee had the right to protect the growing crops on the land, and that for the destruction of them by appellant he has the right to prosecute an action, and recover whatever damages he is shown to have suffered. The contract was not that the landlord's portion of the crop should be set apart to him in the fields after grown, but that the corn should be delivered to him in the crib on the place, and the wheat in the half bushel.

In a case where the owner of the land rented three fields to a party for the purpose of raising a crop thereon, said party to deliver to him one-half of it in the bushel at the usual time of threshing, it was held by this court that for the purpose of being, and until it should be, threshed and divided, the tenant was entitled to the possession of the wheat raised, and that he might replevy it from the owner of the land. *Cunningham* v. *Baker*, 84 Ind. 597.

In the late case of *Gordon* v. *Stockdale*, 89 Ind. 240, where the facts were somewhat similar, but much less specific and certain, upon the question of a tenancy and the rights of the tenant to the growing crop, than in the case before us, it was said that the tenant was entitled to the possession of the whole crop until harvested and threshed.

In the case of *Williams* v. *Smith*, 7 Ind. 559, the court below charged the jury that if they were satisfied from the evidence that the wheat in question was a portion of a crop raised by a party as the tenant of another, and that by the terms of the letting the tenant was to pay one-third of the crop raised, in kind, payable in the half bushel, the wheat so raised by the tenant would be his property, and not subject to an execution against the landlord, until it was delivered by the tenant to him. This court held that the instruction

was correct, and said: " The execution defendant could have no valid title to the wheat, until it was delivered to him in some mode known to the law. * * * After the wheat was harvested, it remained the property of the tenant until it was threshed, measured, and one-third of it set apart for his landlord. At least until that was done, it was not subject to the execution." To the same effect see *Lathrop* v. *Rogers*, 1 Ind. 554.

In the case of *Lacy* v. *Weaver*, 49 Ind. 373 (19 Am. R. 683), it was held that the landlord could not replevy from the tenant the portion of the wheat which the tenant had agreed to deliver in the bushel at threshing time, as rent. It was said: "After the wheat was harvested, it remained the property of the tenant until it was threshed, measured, and one half of it set apart for the landlord." See, also, *Chissom* v. *Hawkins*, 11 Ind. 316.

The case of *Frout* v. *Hardin*, 56 Ind. 165 (26 Am. R. 18), was an action by the tenant against the landlord for damages to a growing crop by the landlord's trespassing animals. The court said: " From the evidence, which is all before us, it appears that Frout had leased the lands in question to Hardin for the current year, 1874, to raise a crop, and was to receive as rent one-half of the corn in rows standing in the field. Under this state of facts, * * * the corn was not the joint property of both parties. Their possession was not equal. The tenant had the right to the possession of the corn until the division was made. Afterward, each party had the right to the possession of his own half."

The following instruction by the trial court was held correct: " If the jury find, from the evidence, that the defendant let to the plaintiff certain fields on the defendant's farm, to tend in corn, in 1874, and gave the plaintiff possession thereof, and the defendant was to have, as rent, one-half of the corn in the field, such contract constituted a tenancy, and enabled the plaintiff to maintain an action against the defendant for a trespass of the defendant's cattle on the plaintiff's

corn in such fields, if such a trespass was committed." There is a class of cases distinguishable from those above cited.

In the case of *Hart* v. *State, ex rel.*, 29 Ind. 200, the owner of land rented one field of the farm upon which he resided. The tenant was to raise a crop of corn. As rent, the owner was to have one-third of the crop raised. It was to be his in the field, when "laid by," after which the tenant was to have nothing more to do with it. It was held that after the corn was thus laid by, the one-third became the property of the landlord, and could not be sold on an execution against the tenant. This ruling was based upon the fact that no further delivery was contracted for nor contemplated by the parties. All having been done that was required under the contract, the property vested in the landlord.

In the case of *Lindley* v. *Kelley*, 42 Ind. 294, the owner of the land and the raiser of the crop of corn thereon was each to save and take care of his half of the crop so raised, the division, by rows of ten, to be made at "cutting-up" time. It was held that the landlord's portion might be levied on and sold under an execution against him, and that the execution created a lien upon it from the time the execution came to the hands of the sheriff. The case was distinguished from those above cited, by holding that no delivery was contracted for.

In the case of *Switzer* v. *Miller*, 58 Ind. 561, where the landlord reserved to himself a certain portion of the crops to be put into a barn on the land, it was held that a sale by the landlord of his interest in the lease carried to the purchaser an interest in the growing crops from the time when he purchased the interest in the lease. The nature of the interest is not stated. The landlord had a lien on the crop under the statute. 2 R. S. 1876, p. 342, section 17; section 5224, R. S. 1881. The assignment of the lease carried that lien to the assignee. *Kennard* v. *Harvey*, 80 Ind. 37.

The doctrine deducible from all of these cases seems to be, that where the relation of landlord and tenant exists, and the

The Chicago and West Michigan Railway Company v. Linard.

tenant is to pay for the use of the land by a portion of the crops raised, he has the exclusive possession of such crops, and may protect them and the possession against the landlord and all others claiming under or through him, so long as anything remains for the tenant to do under the contract, in the way of delivering to the landlord the portion due him.

Our attention has been called to the case of *Scott* v. *Ramsey*, 82 Ind. 330, as sustaining the position of appellant. Under the facts in that case, the landlord had the undoubted right to recover. He had a lien upon the portion of the crop that was taken by one of the defendants, abetted by the other. When the wheat was divided he was entitled to the portion agreed upon by him and the raiser of it.

In the opinion, however, as written by the commissioner, after expressing a doubt as to whether the written contract between the parties was a lease, it is said that, admitting it to be such, and that it created the relation of landlord and tenant between the parties to it, yet, giving effect to it according to its substantial meaning, the contracting parties were tenants in common of the grain produced upon the land. In support of this the cases of *Putnam* v. *Wise*, 1 Hill, 234; *Dinehart* v. *Wilson*, 15 Barb. 595; *Harrower* v. *Heath*, 19 Barb. 331; *Bernal* v. *Hovious*, 17 Cal. 542; *Lowe* v. *Miller*, 3 Grat. 205; *Smyth* v. *Tankersley*, 20 Ala. 212, are cited. These statements may be regarded somewhat as *dicta*, and, therefore, not authoritative. As applied to the case before us, they do not state the law correctly. We can not give our full sanction to the cases cited, because we regard them as in conflict with our own cases, as they are with many others.

It has been held that letting lands upon shares, if for a single crop, is no lease of the land; that in such case the owner of the land and the raiser of the crop are tenants in common of the crop, and hence the former alone must bring trespass for breaking the close. *Bradish* v. *Schenck*, 8 Johns. 151.

In a later case in the same court, KENT, C. J., delivering the opinion, it was held that under a state of facts similar to

the facts in the case before us, where the letting was for six years, it created the relation of landlord and tenant; that an interest in the soil passed; that the landlord and tenant were not tenants in common of the growing crops, and that the interest and property in the crops was exclusively in the tenant, until he had separated and delivered to the lessor his proportion.  *Stewart* v. *Doughty,* 9 Johns. 108.

This latter case has been really overthrown by later cases in the same court, and the cases have gone so far as to practically hold that although the letting may be by contract, in the form and nature of a lease, yet, if the compensation to the land-owner is to be a portion of the crop raised, the owner of the soil, and the raiser of the crops, as to the crops, will be tenants in common.  The result of some of the holdings is to make them tenants in common of both the crops and the land.  Such substantially are the holdings in the cases in 15 Barb. 595, 19 Barb. 331, 1 Hill 234, 17 Cal. 542, 3 Grat. 205, and 20 Ala. 212, *supra,* all cited in the case in 82 Ind. 330, *supra.*

In the case of *Taylor* v. *Bradley,* 39 N. Y. 129, the leading New York cases are reviewed; and while that holding is against our view, the argument of the learned judge is the other way.  He followed those cases simply because they had settled the rule in New York.  The reason for this ruling, as stated in some of the cases, is, that it protects the owner of the land in his rights to his portion of the growing crops. See *Caswell* v. *Districh,* 15 Wend. 379.  This reason can not operate in this State, where, by the statute, the landlord is given a lien upon the growing crops.

The sounder view undoubtedly is, that where the terms of the contract are such as to show that the contracting parties understood and intended that the relation of landlord and tenant should be created thereby, the contract will be a lease, although the landlord is to be compensated for the use of the land by a portion of the crops raised; and that where, in such case, the landlord's portion is to be delivered at a fixed

time, the tenant in possession of the land has the exclusive possession of the growing crops until such time and delivery. Such are our own cases, which are supported by the following, and many other cases that might be cited : *Harrison* v. *Ricks,* 71 N. C. 7 ; *Walls* v. *Preston,* 25 Cal. 59 ; *Alwood* v. *Ruckman,* 21 Ill. 200 ; *Dixon* v. *Niccolls,* 39 Ill. 372 ; *Sargent* v. *Courrier,* 66 Ill. 245 ; *Symonds* v. *Hall,* 37 Maine, 354 ; *Hoskins* v. *Rhodes,* 1 Gill. & J. (Md.) 266 ; *Burns* v. *Cooper,* 31 Pa. St. 426 ; *Ream* v. *Harnish,* 45 Pa. St. 376 ; *Overseers* v. *Overseers,* 14 Johns. 365.

When such are the relations and rights of the parties, they are not and can not be tenants in common of the growing crops, as there is not and can not be a unity of possession. 4 Kent Com. 367 ; Whart. Law Lex. 811 ; Bouv. Law Dict. Rapalje & L. Law Dict. ; *Silloway* v. *Brown,* 12 Allen, 30.

It is insisted further, by the appellant's counsel, that the damages assessed by the jury are excessive. This question is not before us, for the reason that it was not assigned as a cause for a new trial in the court below. As we find no error in the record on account of which the judgment should be reversed, it is affirmed, with costs.

