Filed January 10, 1896.

---

No. 17.460.

## SHAFFER v. STEVENS.

EVIDENCE.—*Gift, Invalidity Of.*—*Growing Crop.*—*Life Tenant.*— *Real Estate.*—Evidence that a life tenant of land stated about a year before his death that all his personal property was to " go to" the remainder-man, is insufficient to show that a gift to a third person by such life tenant of a growing crop of corn which is not in existence at the time of such statement was invalid.

REAL ESTATE.—*Death of Life Tenant.*—*Growing Crop.*—*Remainder-man.*—A life tenant may as against the remainder-man dispose of a crop of corn growing on the land at the time of his death.

From the Henry Circuit Court.

*J. Brown* and *W. A. Brown*, for appellant.

*D. W. Chambers, J. M. Brown* and *S. H. Brown,* for appellee.

HOWARD, J.—This was an action by appellee for damages, and to enjoin appellant from appropriating to his own use the undivided one-half of a crop of corn raised by him upon about seventeen acres of land.

It appears, as we gather from the record, that one James Gahn, now deceased, during his lifetime, conveyed in fee simple the land in question, together with other land, to one Peyton E. Ballard, subject to a life estate in the said Gahn.

James Gahn died during the latter part of April, or early in May, 1894. A few days before his death the neighbors planted the corn in dispute. Gahn left no children. His wife had died several years before his death.

The evidence, as we think, shows without contradiction that the appellant and his wife cared for both Gahn and his wife during the latter years of their lives, and particularly during their last sickness; and that about a week before Gahn's death, after the corn was planted, Gahn told several of the neighbors that he had given to appellant all his corn crop, that he could never repay appellant for what he had done for him, and that his corn crop was all he had to give him.

Some evidence was admitted over the objection of appellant that about a year before his death Gahn had said that all his personal property at his death was to go to Ballard, the remainderman. Even if this were proper evidence it could not affect the gift here attacked. The evidence was not that Gahn had given or disposed of any personal property to Ballard, but that it was "to go" to Ballard on Gahn's death. This was rather an indication of what Gahn intended to do than a state-

ment of what he had done.   Besides, the corn crop was not in existence at the time of the alleged transfer of personal property to Ballard.

- The appellee claims the corn by virtue of a deed made of the land by Ballard a few days after the death of Gahn.   She claims that although appellant cultivated the corn crop, and notwithstanding that the same was given to him by Gahn, yet that she, as now owner of the land, is entitled to the landlord's one-half of the crop.

There is no doubt that appellant performed long and faithful service for Gahn, and no doubt that Gahn, so far as he could, gave this corn crop to appellant in payment, or part payment, of such service.   The only question for decision is whether Gahn, as life tenant, could give the corn crop to him, or whether on Gahn's death the relation of landlord and tenant at once arose between Ballard as successor to the land, and appellant as cultivator of the crop.   We think the life tenant was owner of the annual crop, and might dispose of it during his lifetime.

Gahn was life tenant, and his title to the crop planted during his lifetime was certainly as good as that of any tenant could be to the crop planted during his tenancy.

It is the law in this State that where the relation of landlord and tenant exists, and where the rent is to be paid at a fixed time by the delivery to the landlord of a part of the crop raised, the tenant in possession of the land has exclusive possession of the growing crop until such time and delivery.   *Chicago, etc., R. W. Co.* v. *Linard,* 94 Ind. 319.

Where the term of the tenancy is uncertain, the general principle seems to be recognized, that the tenant who sows the crop shall reap it.   *Heavilon* v. *Farmers'*

*Bank of Frankfort*, 81 Ind. 249. It appeared in that case that when the crops were put out the sale of the land had not been ordered or advertised; and the court said: "It being uncertain when, if ever, the sale would be made, the condition existed which assures to the sower the right to reap."

In the case at bar, according to appellee's theory, Gahn was a life tenant. The term of his tenancy was, therefore, uncertain; and crops planted by him would belong to him, and if undisposed of at his death would go to his estate, and not to the owner of the remainder in the land. Such crops, as between the life tenant and the remainder-man, constituted no part of the freehold. See *Parry* v. *Hamilton*, 138 Ind. 271. Gahn, it would seem, might, therefore, dispose of the crops planted during his lifetime, even though not matured or gathered before his death.

In *Dorsett* v. *Gray*, 98 Ind. 273, it appeared that a widow owned a farm for life, remainder to her two daughters. The widow leased the land to Gray, one of her sons-in-law, during the term of her natural life. She died June 25, 1882. At that time there were growing crops, planted by Gray. On appeal from the judgment in a suit brought by the other son-in-law for a share of the crops, it was held by this court that Gray held a legal right to the crops, and was not bound to pay for them otherwise than as provided in the contract under which he planted them; that the duration of the lease depended upon an uncertain contingency, namely, the termination of the life of the widow; but the term being ended by the act of God, to-wit, her death, Gray was entitled to the growing crops. Citing Taylor Landl. and Ten., p. 80.

In the case at bar, Gahn, as life tenant of the land, was owner of the corn crop planted thereon during his

life, and having given or disposed of that crop to appellant, the latter was not bound to pay for it otherwise than as provided for in the contract under which he received title to the crop from a life tenant. By the terms of that contract, it appears that he had already paid the life tenant for the crop.

The judgment is reversed with instructions to grant a new trial.