**MONTGOMERY COUNTY FARM BUREAU COOPERATIVE ASSOCIATION, INC., Plaintiff-Appellant,**

**v.**

**DESERET TITLE HOLDING CORPORATION, Defendant-Appellee.**

No. 61A01-8612-CV-338.

Court of Appeals of Indiana,
First District.

Sept. 29, 1987.

Rehearing Denied Nov. 18, 1987.

---

C. Rex Henthorn, Harding, Henthorn & Harris, P.C., Crawfordsville, for plaintiff-appellant.

Robert H. Little, Brookston, for defendant-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Farm Bureau Co-op (creditor of tenant farmer) appeals a partial summary judgment for the landlord that the lease entitled the landlord to a fifty percent (50%) ownership interest in crops grown on the leased farmland. We reverse.

## FACTS

In April and May, 1983, Keith Jeffries met with a representative of Deseret Title Holding Corporation (Deseret) to discuss leasing approximately 1030 acres of farmland located in Hendricks County, Indiana. Before signing the lease, Jeffries began investigating several ways to finance his farming venture. In May, Jeffries contacted the Montgomery County Farm Bureau Cooperative Association, Inc. (the Co-op) regarding the purchase and application of fertilizers and chemicals for the farmland he intended to lease from Deseret. The Co-op agreed to supply these items in exchange for a security interest in the crops to be grown in 1983. By letter dated May 16, 1983, the Co-op's manager advised Deseret that the Co-op would provide Jeffries with materials to "put the crops out" and that the Co-op would "hold the lien" until Jeffries paid for the materials. Record at 151.

On May 26, 1983, Jeffries entered into a lease with Deseret wherein Jeffries agreed to "deliver to the Landlord as annual rental for the year 1983, 50 bushels of #2 yellow grade corn per acre." Record at 49. Thereafter, on June 2, 1983, the Co-op filed a financing statement with the Hendricks County Recorder's Office. The statement contained a description of the real estate Jeffries leased from Deseret and of the 1983 crop as collateral. The Co-op then provided Jeffries with fertilizer and chemicals during the growing season, and applied some of these to the land leased by Jeffries. While harvesting the crop, Jeffries noticed that the yield was much lower than he had expected. Jeffries contended that the Co-op had incorrectly applied chemicals to the land and that, as a result, the 1983 crop was almost a total loss.

In fall of 1983, the Co-op and other creditors began making demands on Jeffries for payment. Finally, on February 3, 1984, the Co-op filed a complaint against Jeffries seeking to foreclose its security interest in Jeffries's 1983 crop. The Co-op later amended its complaint to name Deseret and other parties known to the Co-op who might claim an interest in the crops. On November 19, 1984, Deseret filed its answer claiming that, as landlord, it was the owner of fifty percent (50%) of Jeffries's 1983 crop. At that time the corn had been delivered to a grain storage company, and on December 21, 1984, the trial court ordered the corn sold and the proceeds deposited with the court.

On March 6, 1985, Deseret filed a cross motion for partial summary judgment claiming ownership of fifty percent (50%) of the corn or proceeds. The trial court granted the motion on August 26, 1986, stating that pursuant to the lease Deseret was the owner of fifty percent (50%) of the 1983 crops and that Deseret, therefore, was entitled to the proceeds from fifty percent (50%) of the corn which Jeffries had delivered to the grain storage company. The court further stated that, as a matter of law, none of the parties (except

the grain storage company) had any interest in the landlord's fifty percent (50%) of the crops. The Co-op now appeals that decision claiming that Deseret had no ownership interest in the crops since Deseret failed to file a lien pursuant to Indiana Code section 32–7–1–18 (Burns Code Ed., Supp.1987).

## ISSUE

Did the trial court err in finding that the landlord had a fifty percent (50%) ownership interest in crops grown on the leased premises where the lease provided that the tenant would pay as rent a specified number of bushels per acre?

## DISCUSSION AND DECISION

■ The standard of review on appeal of a summary judgment motion is the same standard used in the trial court. *First Savings and Loan Ass'n v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, 1151, *trans. denied.* A summary judgment motion may be sustained only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(c); *Treaster*, at 1151. A party against whom a motion for summary judgment is made must come forward with specific facts which show there is a genuine issue for trial, *Moll v. South Central Solar Systems, Inc.* (1981), Ind. App., 419 N.E.2d 154, 161, but the opposing party's failure to file affidavits opposing the motion will not necessarily render him liable to judgment. T.R. 56(c); *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 163, 341 N.E.2d 785, 788. If the opposing party files no affidavits, summary judgment may be entered against him only if, upon the materials before the court, the moving party is entitled to judgment as a matter of law. *Id.* Thus, upon review of a grant of summary judgment, in addition to considering whether a genuine issue of material fact exists, this court must determine whether the law was correctly applied.

*Smith v. P. and B. Corp.* (1979), 179 Ind. App. 693, 695, 386 N.E.2d 1232, 1234, *trans. denied.* In the case at bar, although the Co-op filed no affidavits opposing Deseret's summary judgment motion, Deseret failed to state facts which would entitle it to judgment as a matter of law.

■ A lease of farmland which provides that a tenant shall pay as rent, a certain number of bushels of grain per acre, does not vest any title to the crops in the landlord. *Chissom v. Hawkins* (1858), 11 Ind. 316. In *Chissom* our supreme court held that where a tenant agreed under the terms of a lease to pay as rent "sixteen bushels of corn per acre for tillable land", that corn was the property of the tenant, and he could discharge the contract by paying the appropriate amount in corn raised on the premises or otherwise procured. *Id.* Further, the court stated that the lease might give rise to an action for breach if the tenant violated its provisions, but that the lease did not divest the tenant of title in the crop to be raised. *Id.* In contrast, a crop share type of agreement where a tenant agrees to pay the landlord a *percentage* of the crops to be grown places the tenant and landlord in the position of tenants in common of the grain produced on the land. *Scott v. Ramsey* (1882), 82 Ind. 330. Under the crop share arrangement in *Scott*, the court held that one third of the crop became the property of the landlord as soon as the grain was put into sacks. *Id.*

■ The lease in this case provided that Jeffries would pay to Deseret "as annual rental for the year 1983, 50 bushels of # 2 yellow grade corn per acre." Considering this provision, the lease is not a crop share, but rather a "crop paid as rent" type of agreement. Deseret emphasizes that the lease also stated that in the event of a crop disaster Jeffries was "entitled to deliver 50% of the farm production in lieu of the bushel rent," but the record contains no evidence that a crop disaster as defined in the lease occurred in 1983.[1] Even if Deser-

---

1. The lease provides:
   "15. In the event of a crop disaster from natural causes defined as a year in which the county average production as reported by USDA falls 30% below the most recent 5 year USDA average for the county for the grain

et could prove that the disaster conditions were met, the "bushels per acre" provision in the lease prevents it from being construed as a crop share agreement.

Since the lease provided for a part of the crops raised to be paid as rent, Deseret must comply with the terms of Ind.Code § 32-7-1-18 in order to hold a lien on the crops. The statute provides in pertinent part:

> "(a) In all cases where a tenant agrees to pay as rent a part of the crop raised on the leased premises, or rent in kind, or a cash rent, the landlord may have a lien on the crop raised under such contract, for the payment of such rent, which lien, if the tenant refuses or neglects to pay or deliver to the landlord such rent when due, may be enforced by sale of such crop in the same manner the lien of a chattel mortgage containing a power to sell.
>
> "(b) Any landlord desiring to acquire a lien on the crop raised under such contract, on such leased premises, shall file in the recorder's office of the county in which such leased premises is located, at any time thirty (30) days prior to the maturity of such crop, and during the year in which such crop is grown, notice of his intention to hold a lien upon such crop for the amount of such rent, specifically setting forth the amount claimed and giving a substantial description of the lands on which such crop is being grown sufficiently precise to identify such lands."

It is clear that under this statute a landlord desiring to hold a lien on crops raised under a "crops as rent" lease must file notice of his intention to hold a lien. The record in this case contains no evidence that Deseret ever filed notice of its inten-

tion to hold a lien on Jeffries's crops. Therefore, the trial court erred in finding that, as a matter of law, Deseret was entitled to a fifty percent (50%) ownership interest in Jeffries's 1983 crops. We reverse and remand for further proceedings consistent with this opinion.

SHIELDS, P.J., and ROBERTSON, J., concur.

---

being produced; then the Tenant shall be entitled to deliver 50% of the farm production in lieu of the bushel rent in Paragraph 1 above."

The only information in the record regarding the disaster conditions was Jeffries's deposition testimony that although 1983 had been declared a disaster year in Parke and Hendricks counties, his application for a Farmer's Disaster Loan had been denied. Deseret asserted in its brief that the disaster conditions in the lease were applicable to the 1983 crop, but we cannot view such

an unsupported allegation in a brief as fact. *See Cook v. Equitable Life Assur. Soc'y of the United States* (1981), Ind.App., 428 N.E.2d 110, 115. Based on the evidence in the record we cannot conclude that the disaster conditions in the lease are the same as those used by the local, state, or federal government to declare a disaster year, nor can we conclude that Jeffries's 1983 crop constituted a disaster as defined in the lease.