[Civ. No. 1553.   Third Appellate District.—December 15, 1916.]

VALLEJO AND NORTHERN RAILROAD COMPANY (a Corporation), Respondent, v. REED ORCHARD COMPANY (a Corporation) et al., Defendants and Respondents; SACRAMENTO AND YOLO BELT LINE (a Corporation) et al., Defendants; S. KOMANO, Appellant.

EMINENT DOMAIN—LANDS WITH GROWING CROPS—AWARD OF DAMAGES —VALUE OF CROPS NOT INCLUDED—RECOVERY BY TENANT.—In an action for the condemnation of orchard lands in the possession of a tenant, under a lease which provided that the lease should terminate in the event that any of the demised lands should be condemned for public use, the tenant cannot recover the value of the crops growing on the lands at the time of the condemnation proceedings out of the damages awarded to the landlord, where he was made a defendant in the condemnation proceedings, but did not appear therein, or make any claim for damages on account of the taking of the right to remove the crops, and no evidence was introduced as to their value, or that he was prevented from harvesting them, or that plaintiff took possession of the lands before the crops were harvested.

ID.—AGREEMENT OF TENANT AS TO PROCEEDS OF CROPS—PENDENCY OF ACTION TO DETERMINE RIGHTS—RECOVERY PREVENTED.—Such a tenant cannot recover the value of the crops from his landlord out of the award of condemnation, where he entered into an agreement with the plaintiff and others, whereby he was entitled to retain possession of the lands and harvest the crops therefrom, the proceeds to be deposited in a bank to be paid to the person or persons finally determined to be entitled thereto, and a suit was pending in the federal court to determine such rights.

APPEAL from an order of the Superior Court of Yolo County denying an application to share in the damages awarded in an action for condemnation of land. W. A. Anderson, Judge.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber, for Appellant.

C. E. McLaughlin, and Arthur C. Huston, for Respondents Reed Orchard Company et al.

Garret W. McEnerney, and Walter Rothchild, for Respondent, John P. Coghlan, Receiver, etc., Successor of Vallejo and Northern Railroad Company.

BURNETT, J.—The question involved respects the claim of appellant to share in the damages awarded for condemnation in the above-entitled action. Komano was a tenant in possession of the Reed orchard property under a five-year lease expiring November 1, 1912. The fee was in the said Reed Orchard Company. The condemnation proceedings were commenced in 1910 and tried in 1912, the preliminary order of condemnation being entered April 18, and the final decree of condemnation April 29, 1912. Komano was named as one of the defendants and he was personally served, but he did not appear in the action. As to him the court found: "That the said defendant, S. Komano, is in the possession of the property herein condemned and also the larger tract or parcel of which the same is a part, as the tenant of the said defendant Reed Orchard Company, a corporation, but that the tenancy and possession of the said S. Komano is by virtue of a certain indenture of lease, . . . but that under and by virtue of the terms of the said lease, it was by and between the said Reed Orchard Company and the said S. Komano understood and agreed that the said lease should be terminated in the event that the said land herein condemned, and the said larger parcel, or any part thereof, should be condemned by any judgment of condemnation, and that the estate, right, title and interest of the said S. Komano therein is of no value." The rental under the lease was seven thousand five hundred dollars per year, payable $3,750 January 1st and $3,750 July 1st of each year. On January 1, 1912, Komano made the semi-annual payment, and there is no dispute that he proceeded as required by the lease to cultivate, prune, spray, and otherwise care for and protect the orchard and fruit crops growing on the premises. An appeal was taken from the decree of condemnation, and pending the appeal, to wit, on July 1, 1912, Komano and the plaintiff and others entered into an agreement whereby the crops of 1912 were harvested and the proceeds applied to the payment of the July rental; to the expenses of harvesting and selling the crops and to certain other items, and the balance of the money was deposited in bank, to be paid to the persons entitled thereto. This

balance amounts to $4,688.03, and represents the net value of the fruit on the trees on the 104.1 acres when the decree of condemnation was entered.   After the decree had become final, a demand was made of the county clerk and county treasurer by the said Reed Orchard Company, and by its assignee, of a portion of the fund, for the payment of the whole of said fund of one hundred and four thousand one hundred dollars awarded as damages as .aforesaid.   A similar demand was made by appellant for the payment to him out of said fund of the value of said crop.   The court denied appellant's application, and hence this appeal.

Certain legal propositions advanced by appellant may well be conceded for the purposes of the case.

1. Where a tenancy is of uncertain duration and is terminated while the crops are growing through no act or fault of the tenant, he has the right to harvest and remove the crops (8 R. C. L., p. 364; Civ. Code, secs. 819, 820); and this rule applies to fruit growing on trees.   (*Vulicevich* v. *Skinner,* 77 Cal. 239, [19 Pac. 424]; *Purner* v. *Piercy,* 40 Md. 212, [17 Am. Rep. 591].)

2. Komano was the owner of this crop of fruit, which is recognized as *fructus industriales,* and "regarded as personal chattels independent and distinct of the land and capable of sale without regard to whether growing or matured."   (*Swafford* v. *Spratt,* 93 Mo. App. 634, [67 S. W. 702]; *Lynch* v. *Sprague Roller Mills,* 51 Wash. 535, [99 Pac. 580].)

3. The default of Komano would not affect his right to any compensation to which he was entitled.   "If the defendants make default, the plaintiff must still have a valuation made and tender the amount to the defendants as a consideration for the property acquired through the proceeding."   (*Aliso Water Co.* v. *Baker,* 95 Cal. 268, [30 Pac. 537].)

4. Where land is taken for public use, the damages awarded are personal property into which the real property taken has been converted by operation of law.   The award represents the aggregate value of all the estates and interests in the real property acquired, and any person interested may obtain a judicial allotment of his proportionate share and recover the amount thereof.   (*Utter* v. *Richmond,* 112 N. Y. 610, [20 N. E. 554]; *Murphy* v. *Hirschman,* 168 App. Div. 153, [153 N. Y. Supp. 849].)

It is declared, though, by appellant that his interest "was not an interest in real property. He had no unexpired term to be valued. His tenancy terminated in the entry of the decree. Because the land was farming land, he thereupon became entitled to entry upon the lands to remove his crop." Again he states: "Necessarily at the time of the trial, Komano had received all the benefits which he was entitled to under the lease up to the crop then growing and this crop, as we have seen, was personal property, and Komano's right to enter and remove the same was the right which the law gave him on the termination of his leasehold. It was not an interest in real property." If it was personal property and not an interest in real property, it is difficult to see how he can obtain in this proceeding any comfort from the doctrine of the cases cited by him that the award represents the aggregate value of all the estates and interests in the real property acquired. The authorities, indeed, seem to contemplate that the condemnation of land reaches only the real property and improvements thereon which are a part of the realty. Our statute (Code Civ. Proc., sec. 1248) provides that in such cases there must be ascertained and assessed "the value of the property sought to be condemned, and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein." If personal property is to be included in the decree of condemnation, it should at least be specified in the decree. If these emblements were merely personal property as claimed by appellant, it is at least doubtful whether it was proper to include them in said decree or to award their value, and it would seem that their owner could remove them after said decree of condemnation as well as before. In this connection it may be said that none of the cases cited by appellant involved a similar contention as that made here by appellant in reference to said verdict awarding damages.

In *Big Lost River Irr. Co.* v. *Davidson,* 21 Idaho, 160, [121 Pac. 88, 92], no consideration was suggested as to who would share in the award. There was an objection, however, that the verdict should have been segregated as to the several parcels of land which were condemned, but the court held that the objection had been waived by failure to take advantage of it at the proper time.

In *Metropolitan West Side Elevated Ry. Co.* v. *Eschner,* 232 Ill. 210, [83 N. E. 809], it was decided that it was the duty of the court in awarding the damages assessed by the jury to determine who had title to the land condemned, and make the award accordingly, and the court declared: "In determining such questions, the court will not be restricted to mere legal titles but will ascertain the rights of the respective owners in the property appropriated, whether such rights are legal or equitable in their nature."

The conflicting claims of title to the *land appropriated* are obviously what the court had in view.

In *Lafferty* v. *Schuylkill River East Side R. Co.,* 124 Pa. St. 297, [10 Am. St. Rep. 587, 3 L. R. A. 124, 16 Atl. 869], the supreme court of Pennsylvania held that "crops planted by the owner of land after the location of a railroad, but before the damages had been paid or secured or notice given of an intent to enter are proper subjects for compensation when the land is taken." In that case, however, the action was brought by the tenant against the railroad company for damages after it had taken possession of the land. There was no suit for condemnation as the company appropriated said land under an agreement between it and the owner of the fee.

In *Buchanan* v. *Kansas City,* 208 Mo. 674, [15 L. R. A. (N. S.) 834, 106 S. W. 531], the decision was in favor of one having a lien on the land which was condemned, and it was held by the court that "when the money was paid into court, it represented, and stood in place of, the land condemned, and the claimants had the same right to and interest in the money that they had in the land."

In *Van Loan* v. *City of New York,* 105 App. Div. 572, [94 N. Y. Supp. 221], it was held, as stated in the syllabus, that "an award, made for the taking of real property in condemnation proceedings, takes the place of the land, and remains subject to mortgage or judgment liens to which the land was subject, and is payable to a receiver appointed in supplementary proceedings on a judgment against the owner of the land." The point involved therein is really foreign to any issue here. The vital consideration involved in *United States* v. *Dunnington,* 146 U. S. 340, [36 L. Ed. 996, 13 Sup. Ct. Rep. 79], was that where lands are condemned for the use of the government, the United States discharges its whole duty to the owners by paying the amount awarded by the com-

missioners into court pursuant to its order, and that if there was any error in the distribution of the same, it should not be charged against the government. The court took occasion, however, to point out who were entitled to share in said award and how they could enforce their claims. Therein the court followed *Crane* v. *Elizabeth*, 36 N. J. Eq. 339, in declaring it will be the duty of the court to decide the question of title of the various defendants in ordering judgment to the respective defendants, and that the court would not be restricted to mere legal titles, but "will ascertain the rights of the respective owners in the property appropriated whether such rights are legal or equitable in their nature."

In *McAllister* v. *Reel*, 53 Mo. App. 81, both *the owner* and a lessee were made defendants in condemnation proceedings. There was only one assessment for damages and it was in favor of the owner and was paid to him. Thereupon the lessee sued the owner to recover his share of the award as money had and received for his benefit. The court said: "We are satisfied that the plaintiff's cause of action is well founded. The defendant admits that the plaintiff was his lessee; that the lease had several years to run; and that the larger portion of the house was condemned and removed. He also admits that he received the entire award. The report of the commissioners conclusively shows that the entire damages to the property were assessed. Certainly under this evidence the defendant has money in his hands which equitably and fairly belongs to the plaintiff and which the defendant must pay." Of course, therein the lessee unquestionably had an interest in the land, and that interest was covered by the award of damages.

*North Coast Ry. Co.* v. *Hess*, 56 Wash. 335, [105 Pac. 853], involved the question of the right of lienors of the land condemned to participate in the award of damages, and it was held that these various lienors had the same claim upon this fund for the satisfaction of their claims as they had against the land itself, notwithstanding the fact that their claim of record was only against the land.

Other cases to the same effect are cited, but they exhibit no special feature.

The precise situation here involved was not presented in any of the cases which we have examined, but we do not mean to hold, however, that it would not have been proper to in-

clude in the award the value of the fruit crop to which appellant claims he was entitled. But did the award actually include such allowance? We can find in the record no warrant for so holding. Appellant himself did not contemplate that the verdict of the jury would include his claim. If he had anticipated or suspected such contingency, he would undoubtedly have appeared in the action and urged his right and presented some evidence in its support. And it may be said that this case emphasizes the importance of such appearance as a moment's reflection must indicate.

Moreover, when plaintiff made application to the court for an order authorizing it to take possession of and use the property described in the judgment of condemnation, appellant joined with the People's Savings Bank in a written opposition to said application, in which they declared not only that said judgment was void in that it did not determine the names of the owners of the various interests and the value of their respective interests, but that the court was without jurisdiction to determine how much of said sum of one hundred and four thousand one hundred dollars either of the defendants was entitled to; that the value of the interest of either of said defendants had not been paid into court for them, and furthermore, that the ''plaintiff should be prevented from in any manner injuring, taking possession of or interfering with the crop of fruit growing on said premises and now being harvested therefrom for the reason that the *plaintiff herein is not entitled to such crop or any part thereof.*''

Of course, appellant is not estopped by the averments of said opposition, but it is worth mentioning as illustrating his attitude at the time of the trial. He was undoubtedly mistaken in certain respects in his position. He was probably right, though, in the contention that plaintiff was not ''entitled'' to said crop or any part thereof. At least, we cannot say that it was included in the judgment of condemnation or in the award of damages.

Our attention has not been called to any evidence in the record of the trial bearing upon the value of said crop. How can it be said that the verdict includes said value in the absence of any showing upon the subject? How can it be determined how much the jury concluded should be awarded for the emblements when they were not apprised of any such

claim? If an interest in the real property was involved, then, as we have seen, it could be assumed that this was a part of the award, and the court might apportion it as the interest of the parties demanded. But the case here concerns personal property according to appellant's claim. Besides, if it could be said that it was contemplated by the verdict, it would be its value not later than the time the verdict was rendered. But there is no evidence that it had any value then. Its potential or prospective value would not control, even if there had been evidence of it.

It is quite apparent that if the court should attempt to carve out of the total award what might be supposed the jury intended for the crop, it would be simply groping in the dark.

Again, there seems to be no evidence in the record that appellant was prevented from harvesting the crop. He claims himself that he had the right to enter upon the lands to remove his crop, but there is nothing to show that he made an effort to do so. He states, also, that "he suffered no injury of any kind until the entry of the order of possession, then his right to the emblements ceased and his equitable right arose to resort to the money in place of resorting to the crop. If the possession had not been taken until after the crop was harvested, Komano would have had no claim upon the money." It is difficult to understand how that circumstance could affect the question of whether the value of the crop was included in the verdict. But aside from that, there seems to be no evidence in the record that possession of the land was taken by plaintiff until after the crop was harvested. It is true that notice was given of an application for such possession to be heard on Monday, the twenty-seventh day of May, 1912, but the motion was not heard until November 11, 1912, and on that date the order was made authorizing "said plaintiff to take possession of and use the property taken and condemned." This was long after the crop had been harvested, as the parties agree. Therefore, it would seem, according to appellant's theory, that he has no claim against the fund constituting the verdict.

Moreover, on July 1, 1912, appellant entered into a written agreement with plaintiff and two fruit companies, electing and agreeing to pursue a certain remedy for the enforcement of his declared claim, and he ought to abide by it. That agreement recites that the said judgment of condemnation had

been entered, and that the value of said 104.1 acres was fixed at one hundred and four thousand one hundred dollars; that appellant is now and ever since the first day of November, 1907, has been in possession of said orchard under the aforesaid lease; that "there is now on said orchard a large crop of pears, plums and apples now being harvested and the harvesting of which will continue during July, 1912, and the greater part of August, 1912"; that said judgment "did not award any specific sum separately to said S. Komano"; that certain appeals were taken in said cause; that the plaintiff claims that it is entitled to take possession of said land and harvest said crops as its own, and appellant claims that the judgment of condemnation is void, and that he is entitled to possession of the premises and the proceeds of said crops; that it is "the desire of the parties hereto that said crops be properly cared for, picked, packed, and sold and the net proceeds be deposited and safely kept and eventually paid to the party who shall eventually be finally adjudged to be entitled thereto." It was therefore stipulated that said Komano "continue in charge of the care, picking, harvesting, and packing said fruit and preparing the same for market under the terms and conditions of the shipping contract hereto attached and made a part of this agreement, and that the said party of the second part will use and exercise proper care, skill and diligence in so doing, according to the best practice and customs of handling like crops." Then follow directions as to how the crops shall be sold and distribution of the proceeds, including the payment to appellant of the reasonable value of his services and the amounts paid out by him from March 22 to July 1, 1912, to wit, the sum of $3,020.64, and the further sum of $396 per month until the harvesting is completed; that the sum of $3,750, which would be due as rent on July 1st, be deposited in the National Bank of D. O. Mills & Co. until the final determination of the rights under said lease, and that it be finally paid to the party entitled thereto; "that the residue shall then be deposited in the said Bank of California, at such rate of interest as may be obtainable to be paid to the persons or person who shall have established its or their right thereto." It is further provided that "the object of this agreement is to provide for the care, harvesting and sale of the said crops so that the net proceeds thereof shall be eventually received by the party entitled

thereto after paying the costs, charges, and expenses hereinbefore set forth; and the parties hereto may proceed with the present or any other litigation which they may deem proper to take in order to establish their right to the said funds."

It is not disputed that an action is now pending in the United States district court to determine who is entitled to this money.

Assuredly appellant could not thus voluntarily waive and surrender his claim to the possession of the property for the purpose of harvesting the crop, and then, for the reason that he was not in possession at the time of harvesting, maintain an action for a portion of the verdict of damages awarded by the jury. Independent of his possession at the time of harvest, his claim was either included or not included in the verdict. No one can say it was so included, as there was neither averment nor proof to indicate it. It was no part of the realty, his interest in said realty having terminated by agreement at the time of condemnation. His claim relates to personal property that became valuable after said verdict was found. If, therefore, said property had been or was appropriated by anyone subsequent to said judgment of condemnation, or appellant's right to the possession of said personal property had been or was defeated, appellant's redress would be against said party so appropriating the said property, or so defeating said right to the possession thereof. It would seem that he has no claim against the Reed Orchard Company. If any cause of action exists in his favor, he should reap the fruits of it in the said action pending in the federal court.

We see no reason to disturb the order of the lower court, and it is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 12, 1917.