[Civ. No. 4977. Third Appellate District.—July 17, 1934.]

C. L. NEWTON et al., Respondents, v. THE S. A. GER-
RARD CO. (a Corporation), Appellant.

Hinsdale, Otis & Johnson for Appellant.

Glenn West for Respondents.

THOMPSON, J.—In this action for money had and received judgment was rendered jointly against The S. A. Gerrard Company and Tom M. Watanuki. From this judgment the company only has appealed. A motion for nonsuit was granted with respect to the defendant H. M. Young.

The appellant, a fruit marketing company, concedes that the money which is involved in this suit was received by it from the proceeds of the sale of a grape crop produced from the vineyard of plaintiffs in 1931 while it was under lease to the defendant Watanuki and that the money belongs to plaintiffs as rental for the premises unless the marketing company, as plaintiffs' factor for the purpose of selling the grapes, was entitled to apply the funds under the provisions of section 3053 of the Civil Code to the satisfaction of a debt of plaintiffs alleged to have been incurred on account of money advanced by appellant for cultivating, harvesting and marketing a crop of grapes from the same premises in 1930 while the vineyard was leased to Young. The respondents assert that the title to the crop of grapes for the year 1930 vested in Young as the lessee of the premises; that the appellant was not their factor and that no indebtedness was incurred against them on account of money advanced by the appellant to Young for cultivating, harvesting or marketing his crop of grapes.

The record contains a conflict of evidence, but the following statement of facts is adequately supported: The appellant is a fruit marketing corporation organized under the laws of Ohio and authorized to conduct its business in the state of California. The defendant H. M. Young was a representative of the corporation in the county of San

Joaquin. The plaintiffs are husband and wife. They own a seventy-acre vineyard near Woodbridge. In November, 1929, they executed a written lease of this property to H. M. Young for the ensuing season in consideration of the payment of $2,000 cash rental due prior to October 25, 1930, and, in addition thereto, one-half of the remaining profit derived from the sale of the crop of grapes after deducting therefrom the agreed cost of cultivating, harvesting and marketing the crop in the sum of $2,000. It was specified that the balance of the rental in excess of the original $2,000 payment should be made "as soon as all returns are received". The lessee Young immediately took possession of the land and cultivated and harvested the crop of grapes. The plaintiffs had nothing to do with the producing or marketing of the crop. The crop of grapes was marketed by the appellant pursuant to the terms of the lease, which provided in that regard:

"It is mutually agreed that the crop from the above vineyard shall be marketed with The S. A. Gerrard Co., in the name of C. L. Newton, and that the parties hereto do hereby authorize The S. A. Gerrard Co. to make the payments and divisions as above mentioned."

This lease was prepared by Young, who made all arrangements with the appellant for the money which it advanced for the cultivation and harvesting of the crop. Young paid the plaintiffs the specified sum of $2,000 on account of rent. The crop was sold by the appellant at a loss of $3,684.52. Without plaintiff's knowledge or consent the appellant charged the "Newton Vineyard" with a deficit of $1842.26.

In January, 1931, Young, who was still employed with the appellant corporation, notified plaintiffs he would not renew the lease for another season, but did procure another lessee in the person of the defendant Tom M. Watanuki, with whom the plaintiffs subsequently executed another written lease of the same premises for the season of 1931 in substantially the same language which was employed in the Young lease, except that the final clause of the Watanuki lease, which authorized the appellant to market the crop of grapes, contained this language:

"It is further agreed that the party of the second part will perform all work on the place in the manner specified and directed by The S. A. Gerrard Co."

At the time the Watanuki lease was executed, without further consideration, the following written agreement was signed by C. L. Newton and H. M. Young:

"It is agreed that lease, for 1930, between C. L. Newton and H. M. Young, shall be modified as follows: Wherein it is agreed in lease that a certain division of returns shall be made at the end of 1930 season, same is hereby modified, so the division shall be made at the end of the 1931 season, as far as C. L. Newton part is concerned; but that H. M. Young will settle his part in cash; and that the new lease shall run between C. L. Newton and Tom M. Watanuki.

"Signed this 20th day of January, 1931.

"(Signed) C. L. NEWTON
"(Signed) H. M. YOUNG."

All of these instruments were prepared by Young, whose apparent motive in securing the leases was to obtain business for the appellant in marketing the crops of grapes. The crop of 1931 was marketed by the appellant for a net profit of $3,725.10, after paying plaintiffs the specified sum of $2,000 and all costs of cultivation and harvesting. The balance of the proceeds of the sale of the crop of 1931 was credited to the alleged indebtedness of the plaintiffs which had been charged to them by appellant without their knowledge or consent on account of the money which had been advanced to Young in the previous year for cultivating and harvesting his crop of grapes.

The plaintiffs brought this suit against both lessees and the marketing company for money had and received. The case was tried by the court sitting without a jury. Upon motion the cause was dismissed against H. M. Young. Findings were adopted favorable to the plaintiff on all the material issues. A judgment for $1127.82 was accordingly rendered jointly against the appellant and Tom M. Watanuki. The marketing corporation only has appealed. The problems which are involved on this appeal must be determined by a construction of the language of the Young lease and the written memorandum which was signed by Newton and Young January 20, 1931.

By the terms of the lease from plaintiffs to Young, the title to the grape crop which was produced on the demised premises in the year 1930 passed to the lessee who had the exclusive right to harvest and market the fruit.

(*Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 32 Cal. App. 347 [162 Pac. 914]; 15 Cal. Jur. 671, sec. 80; sec. 1926, Civ. Code.) Since, by virtue of the lease, the title to the grape crop for the year 1930 belonged exclusively to Young, the plaintiffs owned no interest therein which they could authorize the fruit marketing corporation to sell for them as their factor. Section 2026 of the Civil Code defines the term factor as ''an agent who, in the pursuit of an independent calling, is employed by another to sell property for him, and is vested by the latter with the possession or control of the property, or authorized to receive payment therefor from the purchaser''. No title to the crop of grapes was reserved in the lessors by the terms of the lease. The plaintiffs merely agreed that the fruit might ''be marketed with The S. A. Gerrard Co., *in the name of* C. L. Newton''. After the execution of that lease the plaintiffs had no property rights in the crop of grapes which they could authorize the appellant to sell for them, and they had no right of possession of that crop with which they could vest the appellant. In the sale of that crop of grapes the appellant therefore did not act as the factor of the plaintiffs.

It follows that the appellant therefore held no factor's lien upon the money in its hands which belonged to the plaintiffs, under the provisions of section 3053 of the Civil Code.

▮ The appellant had no legal right or authority to charge to an account against the plaintiffs any money which it advanced at the request of the lessee Young as costs incurred by him for cultivating, harvesting or marketing his crop of grapes. By the specific terms of the lease to Young, the plaintiffs demised and farm-let to him their seventy-acre vineyard at Woodbridge for the season of 1930. The lessee was granted the exclusive right to the property during the term of the lease ''for his sole and proper use and benefit for and during the said term aforesaid, together with all the tenements and hereditaments hereunto appertaining''. The lease also provides that the lessee shall ''till and in all respects cultivate the premises above mentioned, during the term of this lease in a good and farmerlike manner''. It was therefore the duty of the lessee to cultivate and farm the premises and harvest the crop at his own expense. No part of the farming of the vineyard or the harvesting of

the crop was imposed upon the lessors. In consideration for the execution of this lease it was provided that the plaintiffs should be paid an aggregate sum of $2,000 as rental, prior to October 25, 1930. In addition to that definite sum of $2,000 which was to be paid as rent, the lease further provides in that regard:

"Then after deducting the above payments, and all expenses necessary for the proper harvesting, shooks, materials, etc., and marketing of the said crop and the sum of Two Thousand Dollars ($2,000.00) (being the amount agreed upon for spring and summer work) has been deducted, the sum remaining over, if any, is to be divided between the parties hereto on a fifty-fifty basis, or each sharing alike. The payments for the split to be determined as soon as all returns are received."

There appears to be no ambiguity in the foregoing language. Clearly the lessors assumed no responsibility for any cost which might be incurred in cultivating, forming, harvesting or marketing the crop of grapes. The plaintiffs were to receive the definite sum of $2,000 as rent regardless of the size of the crop produced or the proceeds received upon the sale thereof. In addition to that specific sum, the plaintiffs were also to receive as a further payment of rent one-half of the remaining net proceeds of sale, if any such existed, after "harvesting, shooks, materials, etc., and marketing of the said crop", were first paid by the lessee, which costs and expenses were stipulated and agreed to in the aggregate sum of $2,000. The language above quoted does not mean that the lessors assumed the liability of either incurring or paying such costs. It merely means that the net balance of the proceeds of sale of the fruit, after $2,000 is deducted therefrom, as the agreed cost of farming and marketing the fruit, shall be added as rental to the first definite sum of $2,000 which was specified.

Mr. Young was not authorized by the plaintiff to incur any expenses for cultivating, harvesting or marketing the crop which should become their obligation. No money was advanced by the appellant with the authorization of the plaintiffs. The indebtedness which was incurred on that account was solely at the request of Young. The appellants therefore had no authority to charge the "Newton Vineyard" account with any portion of the deficit which accrued

on account of the marketing of the crop of 1930, so as to obligate the plaintiffs therefor.

Nor does the signing by C. L. Newton of the subsequent written agreement to postpone the final division of returns from the sale of that crop purport to assume liability on the part of plaintiffs for any such indebtedness, or authorize the appellant to pay any portion thereof from the proceeds of the future sale of the crop which was to be produced by Watanuki under his separate lease of the premises in the year 1931. In fact, it appears that the plaintiffs did not know that any such charge had been made against them. The lease to Watanuki was separate and distinct from the Young lease. It had no connection therewith. The first lease to Young was terminated. Mr. Young had informed the plaintiffs he would not renew his lease. There was no profit from the Young lease from which a division of proceeds could be made. It is, however, true that the document dated January 20, 1931, which is relied upon by the appellant, and which was prepared by Young, stated that "It is agreed that lease for 1930, between C. L. Newton and H. M. Young, shall be modified as follows: Wherein it is agreed in lease that a certain division of returns shall be made at the end of 1930 season, same is hereby modified, so the division shall be made at the end of the 1931 season." This language merely purports to defer the time of settling the division of returns provided for in the Young lease. There were no such proceeds to divide. It does not appear that Young had any interest in the Watanuki lease. He secured no share in the profits to be derived from the sale of grapes in 1931 under the Watanuki lease. The last-mentioned instrument contains no language authorizing the appellant to apply the proceeds of the sale of grapes under the Watanuki lease to the payment of an obligation incurred by Young for farming the land under his own lease. Moreover, the written instrument purporting to defer the "division of returns" between Newton and Young was without consideration and therefore void.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.