[Sac. No. 1097.    Department Two.—April 3, 1905.]

GEORGE E. WILHOIT, as Executor, etc., Respondent, v. GEORGE SALMON et al., Appellants.

DEED—DELIVERY—ESCROW—FINAL DELIVERY AFTER DEATH—LIFE ESTATE RESERVED TO GRANTOR.—A deed delivered absolutely to a third person in escrow, to be delivered to the grantees named upon the

death of the grantor, vests the title immediately in the grantees, qualified only by a life tenancy in the grantor, which from the nature of the transaction was reserved.

ID.—CONSTRUCTION OF DEED—GRANT OF "RENTS, ISSUES, AND PROFITS" —RIGHT OF LIFE TENANT TO EMBLEMENTS DIVESTED.—Where the deed by its terms granted all of the interest of the grantor in the land, "together with the rents, issues, and profits thereof," it divested the grantor as life tenant of all right to emblements and grain rental from unharvested growing crops to which the personal representative of the grantor would otherwise be entitled at the time of the grantor's death, and vested the same in the grantees under the deed.

APPEAL from a judgment of the Superior Court of San Joaquin County.   Edward I. Jones, Judge.

The facts are stated in the opinion of the court.

Nicoll, Orr & Nutter, for Appellants.

A. H. Ashley, for Respondent.

LORIGAN, J.—This action is brought to recover certain wheat and barley, or its value.   The case was tried below upon an agreed statement of facts from which it appears that on November 21, 1895, Jane Salmon, plaintiff's testatrix, owned certain farming-lands in San Joaquin County, and on that day made, executed, and acknowledged a deed of said lands in favor of two of the defendants, her son and daughter. This deed was delivered to and deposited with one W. B. Nutter in escrow, to be by him delivered to her grantees therein upon her death.   This deed conveyed to each of said grantees a one-half interest in said land, and following the description therein contained the usual words, "together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof."   On August 24, 1898, said Jane Salmon leased said farming land, described in said escrow deed, to one of the defendants, George Salmon, for one year, the lease providing that he should deliver to her one half of the crops to be raised on said land as rental therefor. The lessee took possession under said lease, and in due season sowed the premises to wheat and barley.   On January

20, 1899, while the crops so sown were standing and growing
on the premises, Jane Salmon died testate. On the next day
W. B. Nutter delivered the said deed held by him in escrow
to the grantees therein, who immediately recorded it. The
crops were harvested by the tenant in August, 1899, and
thereupon the plaintiff, who had been duly appointed executor
of the last will of said Jane Salmon, deceased, demanded of
the tenant as the agreed rental of said land, and as belonging
to the estate of decedent, one half of the grain raised on said
premises. The grantees in said deed likewise demanded said
grain as rental of said premises, and as belonging to them
under the terms of their conveyance from the testatrix, and
the tenant, acceding to the latter demand, turned said grain
over to them. The plaintiff, as such executor, then brought
this action against the grantees under the deed, to recover
possession of the grain, or its value, and the court having
rendered judgment in his favor, said grantees appeal from
said judgment.

The only question on this appeal is who became entitled
to the one half of the grain—rental of said premises—upon
the demise of Jane Salmon. Did it go to her executor, as
emblements at common law, which, by reason of her tenancy
for life of the premises, he was entitled as her legal repre-
sentative to control, as part of her estate, or, did it pass to
her grantees under her deed to them wherein she conveyed
the premises "together with the rents, issues and profits
thereof"?

There is no question made in the case as to the validity of
the conveyance from Jane Salmon to the appellants. The
effect of the making and absolute delivery of that deed to
Nutter, to be given to the grantees upon her death, vested the
title immediately in them, qualified only by a life tenancy in
the grantor, which from the nature of the transaction was
reserved. (*Bury* v. *Young*, 98 Cal. 451, 452;[1] *Wittenbrock*
v. *Cass*, 110 Cal. 6.) It is therefore insisted by the respondent
that, as an incident to this reserved life estate, was the
common-law right of her legal representatives to take her
share of the rental of the premises, upon her death, as part
of her estate.

It is the rule of centuries, which, as part of the common

[1] 35 Am. St. Rep. 186.

law and in the absence of any change or modification by our statute must be applied in this state (Pol. Code, sec. 4468), that where a tenant for life sows land he is entitled through his legal representatives to the growing crops, in case the estate determines by his death before the produce can be gathered. These profits are termed emblements, and the right to them is given on obvious principles of justice and policy, as the time for the determination of the estate is uncertain. He who rightfully sows ought to reap the profits of his labor; and the emblements are confined to the profits rightfully arising from the annual labor of the tenant. This right to such emblements is not confined to such crops as the tenant for life himself may sow, but applies also to such as he may have an interest in, as rental, under lease of the life-estate premises. Tenants for life have the power to make under-leases, and if the original estate determines by the death of the tenant for life, before the date of payment of rent by the under-tenant, the personal representatives of the tenant for life are entitled to recover from the under-tenant the rent in arrear. (4 Kent's Commentaries, 14th ed., p. 79; 1 Cooley's Blackstone, 4th ed., pp. 122, 124; 1 Warner on Law of Administration, sec. 298.)

So that if in the present instance we had to deal with a life estate, such as was usually and technically created at common law, and to which the common-law right of emblements particularly applied, the question would be free from embarrassment. But we have not. Such a life estate as was reserved here by Jane Salmon by virtue of her conveyance to the appellants, and its deposit in escrow, to be delivered to them upon her death, was unknown at common law, and, in fact, could not be so created. (*Hawes* v. *Stebbins*, 49 Cal. 372.) The effect of such a conveyance would be to attempt to create a freehold to commence *in futuro*, and at common law would be void, though now under the code the creation of such freehold is authorized. (Civ. Code, sec. 767.) When, therefore, we speak of estates for life, and the application of the common-law right to emblements as incident to their creation and existence, there is naturally presented to the mind those life estates which were created as at common law by some third person in favor of the life tenant with remainder over. To such estates the right of em-

blements always applied. But here we have no such created tenancy. The life tenancy of Jane Salmon was not created by a third person, but was reserved to her by virtue of her conveyance in escrow in favor of the grantees, and the extent to which she reserved such life estate, with its incidents, is to be determined from a consideration of the terms of such conveyance. We must look to it to ascertain whether, by its terms, she intended to divest the life estate she reserved of its common-law incident as to emblements. If she did, that is the end of the inquiry, because the common-law rule cannot be invoked by her legal representatives to defeat the intention of the life tenant expressed in her deed, as to the extent to which her grantees therein should take the premises conveyed, upon the termination of her life estate.

When Jane Salmon made her conveyance to the appellants, it was for her to determine the extent to which she should transfer her property to them. In reserving her life estate in the premises, it was perfectly competent for her to determine to what extent she should circumscribe her reserved estate as to any of its incidents, and correspondingly enlarge the rights of her grantees. If she saw fit by the terms of her deed to cut off the common-law incidents of a life estate—the right to emblements—by words clearly having that effect and operation, that was her right. And this is what, by the express terms of her deed, she did. To the fullest extent possible she conveyed to her grantees all her interest in the land, "together with the rents, issues and profits thereof." She divested herself of all existing and future rights in the property, except solely the right to retain the use and occupancy of the premises and take and receive the rents and profits during her lifetime. Included in those divested rights was that of the common-law incident to an estate for life—the emblements. Under her reserved life estate the right only of the grantees to possession of the premises was postponed until her death. When she died, *eo instanti,* all her interest in the reserved estate ceased, and by the terms of her conveyance, what might otherwise have gone to her legal representatives as emblements at common law, immediately passed under the terms of her conveyance to her grantees. In her grant to them the language was broad and comprehensive enough to deprive her of all common-law incidents of a

life estate, and we see no room for contention that it did not.

The clause in her deed granting to the appellants the premises with the "rents, issues and profits thereof" is entirely incompatible with any construction which would support the contention of respondent that the right to the "rents" of the premises was reserved to the grantor as a common-law incident to her life estate. To so hold would be to render such clause meaningless and inoperative. It would be idle to suggest that by it the grantor intended to convey only such crops to her grantees as the latter might sow after obtaining possession on her death. They would take those by virtue of their ownership of the land, and independent of any such provision in the deed. They could, however, only take the crops which were sown by her while life tenant, or to which she would be entitled as such, by virtue of such clause in their deed, and it was undoubtedly the intention of the grantor to effect that purpose—the only one which the provision would be pertinent to accomplish, and which we think it did.

While not presenting exactly the same features as in the case at bar, much of the reasoning of the court in *Waugh's Executors* v. *Waugh*, 84 Pa. St. 350,[1] sustains the conclusion we reach.

The judgment is reversed, with directions to the lower court to enter a judgment in favor of appellants.

Henshaw, J., and McFarland, J., concurred.