## VAWTER, ADMINISTRATOR, v. FRAME ET AL.

[No. 7,354.    Filed October 13, 1911.]

1. LANDLORD AND TENANT.—*Rents.*—*Parts of Crop.*—*Life Tenants.* —*Remaindermen.*—Rents due to a life tenant at his death are collectible by his personal representative; but grain rent, to be paid at threshing time, is not due until such time, and, being annexed to the real estate, descends with the reversion to the remaindermen.  p. 483.

2. LIFE ESTATES.—*Crops.*—*Remaindermen.*—Growing annual crops belonging to a life tenant constitute personal property and pass at her death to her estate.  p. 483.

3. LANDLORD AND TENANT.—*Leases.*—*Cropping on Shares.*—*Tenancies in Common.*—*Remainders.*—A lease executed by the life tenant of a farm, providing that the lessee should "in a good and husbandlike manner * * * break and plow said parts of said land so let and rented to him, * * * and * * * deliver one-third of all the grain * * * to said [lessor], as the part, interest and share of said annual crop * * * to be so received by, and belonging to, said [lessor], * * * said [lessee] to receive as his part, and in payment for the work and labor done by him, and expenses incurred by him in the production of said * * * crops, two-thirds of * * * the grain * * * together with the straw," the life tenant occupying the farm and directing the sowing of the crops, and the manner thereof, constitutes the parties thereto tenants in common of the crops raised, the words "let" and "rent" being in common use in describing cropping arrangements, regardless of their technical legal meaning; and upon the death of the life tenant before a division of the crop, her share passes to her personal representative, and not to the remainderman.  p. 483.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by John W. Frame and another against William C. Vawter, as administrator with the will annexed of the estate of Matilda Frame, deceased.  From a judgment for plaintiffs, defendant appeals.  *Reversed.*

*DeWitt Q. Chappell,* for appellant.

*A. J. Rutledge, S. B. Hatfield, H. F. Fulling* and *W. S. Hatfield,* for appellees.

IBACH, J.—Matilda Frame, under the terms of her husband's will, was the life tenant of a farm in Warrick county. In July, 1907, she made an agreement with John H. Sasse, whereby he was, under her direction, to cultivate parts of the farm in wheat, and was to deliver to her at threshing time, as her part of the crop, one-third of the grain raised. Mrs. Frame died in February, 1908, before the maturity of the crop sown by Sasse in accordance with his agreement. After the wheat was threshed, the third part that was to come to Mrs. Frame was claimed by both Mrs. Frame's administrator, on behalf of the devisees and legatees under her will, and appellees, the remaindermen in fee of the land under the will of Mrs. Frame's husband. By agreement the administrator was allowed to sell the wheat and keep the proceeds, in lieu thereof, pending settlement by the court. Appellees filed a claim against defendant for the value of the wheat, and the cause was tried without a jury on an agreed statement of facts, which contained all the evidence in the case. The court found that there was due to appellees, for rent of lands cultivated by the tenant of said decedent, the full amount held by the administrator to abide the event of this action, and ordered him to pay over to appellees such sum received for the wheat sold.

Twenty errors are assigned, but the consideration of those assigning that the decision of the court is not sustained by sufficient evidence and is contrary to law will be sufficient, in view of the disposition made of the case.

Appellees base their claim on the following statute: "When a tenant for life who shall have demised any lands shall die on or after the day when any rent becomes due and payable, his executor or administrator may recover from the undertenant the whole rent due; if he die before the day when any rent is to become due, they may recover the proportion of rent which accrued before his death, and the remainderman shall recover the residue." §8069 Burns 1908, §5223 R. S. 1881.

Rents due to a life tenant, at his death are collectible by his personal representative.   Rents have not accrued until they become due, and grain rent, to be paid at thresh-ing time, does not become due until that time.   Rents, until they become due, are annexed to the real estate, and thus go with the reversion to the remainderman. *Lowrey* v. *Reef* (1891), 1 Ind. App. 244; *King* v. *Anderson* (1863), 20 Ind. 385; *Watson* v. *Penn* (1886), 108 Ind. 21, 58 Am. Rep. 26; *Henry* v. *Stevens* (1886), 108 Ind. 281; *Murray* v. *Cazier* (1900), 23 Ind. App. 600.

But growing annual crops belonging to a life tenant are a part of his personal property, and, at his death, go to his estate.   §2777 Burns 1908, §2260 R. S. 1881; *Kluse* v. *Sparks* (1894), 10 Ind. App. 444; *Austin* v. *McMains* (1896), 14 Ind. App. 514, *Shaffer* v. *Stevens* (1896), 143 Ind. 295.   Both of these principles are fully settled, and are firmly incorporated in the law of our State, by statute and by judicial interpretation.

The controlling questions in the present case are whether, under the contract with Mrs. Frame, Sasse leased the lands cultivated, and was her tenant, or whether he was a cropper, and thus a tenant in common of the crop with her.   If the contract is a lease, creating the relation of landlord and tenant, and the third part of the grain was to go to Mrs. Frame as rent, appellees should recover under the statute; but if the contract is a cropping agreement, creating the relation of tenants in common in the crop, appellant must recover, for in such case Mrs. Frame was, at the time of her death, the owner of an undivided interest in the growing wheat. The decisions of the courts are not entirely in harmony in interpreting contracts where one farms the lands of another, and the crops are divided.   Usually, if the contract is for a single season it is held not to be a lease.   The case of *Scott* v. *Ramsey* (1882), 82 Ind. 330, holds that even if such an agreement be con-

sidered a lease, the parties are tenants in common of the crop.

In the case of *Chicago, etc., R. Co.* v. *Linard* (1884), 94 Ind. 319, 48 Am. Rep. 155, the court, after reviewing many cases, said: "The sounder view undoubtedly is, that where the terms of the contract are such as to show that the contracting parties understood and intended that the relation of landlord and tenant should be created thereby, the contract will be a lease, although the landlord is to be compensated for the use of the land by a portion of the crops raised." The case of *Louisville, etc., R. Co.* v. *Hart* (1889), 119 Ind. 273, 4 L. R. A. 549, holds that where, under an arrangement between the owner of land and another person, the latter harvests the hay grown upon the land, and gathers the whole in stacks, he to have three-fifths, and the landowner two-fifths, they are tenants in common of the hay in the stacks.

The announcement in the case of *Chicago, etc., R. Co.* v. *Linard, supra*, is in harmony with the following general rule, announced in 24 Cyc. 1466: "The intention of the parties as expressed in the language they have used, interpreted in the light of the circumstances, controls in determining whether or not a given contract constitutes a lease. Where there is a reservation in the agreement of a certain portion of the crop as rent *eo nomine* this necessarily constitutes a lease, and creates the relationship of landlord and tenant between the parties." In the leading case of *Warner* v. *Abbey* (1873), 112 Mass. 355, the court said: "In construing contracts for the cultivation of land at halves, it is impossible to lay down a general rule, applicable to all cases; because the precise nature of the interest or title between the contracting parties must depend upon the contract itself, and very slight provisions in the contract may very materially affect the legal relations of the parties and their consequent remedies for injuries as between themselves. In some cases, the owner of the land gives up the entire pos-

session, in which event it is a contract in the nature of a lease with rent payable in kind; in other cases, he continues to occupy the premises in common with the other party, or reserves to himself that right, and so a tenancy in common to that extent is created, and each is entitled to the joint possession of the crops, or the possession of the one is the possesion of the other, until division; or he may retain the sole possession of the land, and the other party may have the right to perform the labor and receive half the crops as compensation; or the two parties may become tenants in common of the growing crops, while no tenancy in common as such exists in the land.''

In a subject note on croppers in the case of *Kelly* v. *Rummerfield* (1903), 98 Am. St. 951, 953, the rules are thus stated: ''It appears from the authorities that the question to be determined in every case of cultivation of land on the shares, when the agreement between the parties is open to more than one construction, is, Does the contract give the landowner his share as rent or the occupant his share as compensation for his labors? If the former, the person working the land is a tenant. If the latter, he is simply a cropper. * * * Every form of contract by which the use of land is given to one who is to cultivate it and give the owner as compensation therefor a share of the produce, creates a tenancy in common in the crop. The principle is everywhere observed that when one farms the land of another under an agreement by which he is to give the landowner a part of the crop raised, he and such owner, in the absence of stipulation to the contrary, become tenants in common of the crops raised, until a final division is made.'' However, the last two sentences quoted carry the rule further than is necessary for us to do in determining the case before us.

In order to determine whether the contract under consideration is a lease or a cropping agreement, it becomes our duty to ascertain, as clearly as possible, what relation the

parties intended to create between themselves.   The contract, as set out in the agreed statement of facts, follows:

"Said Sasse shall, in a good and husbandlike manner, in the months of July, August and September, break and plow said parts of said land so let and rented to him, and shall immediately thereafter so harrow and prepare said ground that it will be in good and proper condition to sow and drill wheat thereon, and that at the proper time in either the month of September or October of said year said Sasse shall drill and seed said land in wheat, said Sasse to furnish the seed so sown on said land, and that thereafter at the wheat-harvest time in the following year, and at the proper time to cut, reap and save said wheat, said Sasse shall cut, reap and save said wheat, and that as early thereafter as it can safely and properly be done, said Sasse is to have all of said wheat so sown and raised by him properly threshed and cleaned, and is to deliver one-third of all of the grain of said wheat to said Matilda Frame, at the place where it is threshed, as the part, interest and share of said annual crop of wheat to be so received by, and belonging to, said Matilda Frame; and said Sasse is to receive as his part, and in payment for the work and labor done by him, and expenses incurred by him in the production of said wheat crop, two-thirds of the full amount of the grain of said crop, together with the straw severed and removed from said real estate."

This contract, as set out, is somewhat ambiguous.   The lands are not specifically described, and no mention is made of a specific term.   One statement is that the land was "let and rented," but it is later stated that Sasse was to deliver one-third of the grain to Matilda Frame at the threshing place "as the part, interest and share of said annual crop of wheat to be so received by, and *belonging to,* said Matilda Frame, and said Sasse is to receive as his part, and *in payment for the work and labor done by him, and expenses incurred by him in the production of said wheat crop,*" (our italics) two-thirds of the grain, together with the straw.   The part to be received by Mrs. Frame is not described as rent, but as the interest and share already belonging to her.   Sasse was to receive the two-thirds remaining, to-

gether with the straw, as his part, and in payment for the work and labor done by him and expenses incurred. These words clearly import not a lease, but a cropping agreement, under which a tenancy in common in the crop was intended by the parties and implied by law. It further appears, in evidence, that Mrs. Frame remained in possession of the farm, dwelling on it; that Sasse cultivated only parts of it; that Mrs. Frame directed as to what parts should be sown, and the way in which it was to be done. On considering these facts, in connection with the phraseology of the contract, we are constrained to hold that the agreement between Mrs. Frame and Sasse was a mere cropping contract, and not a lease; and that at all times after the planting of the crop Mrs. Frame was the owner of an undivided interest in it, she and Sasse being tenants in common of the crop. Therefore, the lands cultivated in wheat were not leased or demised within the meaning of §8069 Burns 1908, §5223 R. S. 1881, and the third part of the grain, which came to Mrs. Frame, was her personal property, and, under §2777 Burns 1908, §2260 R. S. 1881, should be inventoried in her personal estate, and go to her personal representative.

In so construing the contract between Mrs. Frame and Sasse, we are not unmindful of the use of the words "let and rented" in the contract, as set forth in the agreed statement of facts, nor of the use of the same words and the term "rental agreement," as applied to the same contract several times in the agreed statement. We know that these words are in common use to describe any arrangement whereby one person cultivates the land of another for a portion of the crop, without regard to their legal significance. The real status of the parties is to be determined from the incidents of the contract, and the duties which each is to perform.

In the case of *Harrison & Son* v. *Ricks* (1874), 71 N. C. 7, the court said, while considering the interpretation of

contracts for cultivating lands in which the owner receives a portion of the crop, and the cultivator a portion: "Which of these characters [tenant or cropper] an occupier bears depends entirely on the agreement between the parties.   *   *   *   If the contract clearly conveys the land to a lessee for a term, in the absence of some contrary and controlling provision, the lessee is a tenant. But generally, when the contract is oral or inartificially drawn, it is left doubtful whether an estate in the land was intended to pass. In such case the intent, one way or the other, must be inferred from the other provisions of the agreement. The use of the word 'rent,' as that the owner has 'rented' his land to another, has, by itself, but little weight in the interpretation of an oral or inartificially and obscurely written contract." In the case of *Walls* v. *Preston* (1864), 25 Cal. 59, the court said: "If the agreement contains terms which by themselves would import a lease, and other terms which provide for a division of the crops, and it is doubtful which it is —a lease or a cropping contract—it will be deemed a cropping contract, by reason of a division of the crops."

It is unnecessary to consider the other errors assigned. The judgment of the court below is reversed, and the court directed to enter judgment for appellant.