[Civ. No. 4138.   Fourth Dist.   Jan. 3, 1951.]

HUBERT B. LLOYD, Individually and as Administrator, etc., Appellant, v. FIRST NATIONAL TRUST AND SAVINGS BANK OF FULLERTON et al., Respondents.

Forgy, Reinhaus & Forgy for Appellant.

McFadden, Turner & Owens and Head, Jacobs & Corfman for Respondents.

GRIFFIN, J.—Action for declaration of rights. This is a dispute between plaintiff Hubert B. Lloyd, as administrator of the estate of Mrs. J. A. Lloyd, and defendant Charles Tuffree. In 1912, Mrs. Lloyd was given a life estate in 30 acres of land, by will, with the remainder on her death to Tuffree. Subsequently, she planted the land to Valencia orange trees. In January, 1931, she conveyed to the defendant First National Trust and Savings Bank of Fullerton, in trust, the life estate in the 30 acres, under which trust the plaintiff, Hubert B. Lloyd, individually, and his mother, Mrs. Lloyd, who died February 14, 1948, were beneficiaries. The bank arranged for the care of the grove and collected the income therefrom, with the exception of the 1947-48 crop of oranges.

The position of plaintiff is that at the time of the death of the life tenant the 1947-48 crop of oranges was a "made" crop on which no further work was necessary to bring it to maturity. The 1947-48 orange crop blossomed, or was "set" about April, 1947, and matured about May 15, 1948, but was not picked and sold by Tuffree until the months of July and September, 1948. The net proceeds were $12,586.56. Plaintiff claims these proceeds as administrator for the estate of the life tenant. Tuffree claims them as remainderman. Defendant bank claims $1,894.25 for reimbursement from the proceeds for money expended by it, as trustee under the trust, for the

care and maintenance of the orchard until the date of Mrs. Lloyd's death.

The trial court found generally that decedent Charles P. Tuffree executed a will in 1909 which recites in part:

"I also leave my 14 shares of water stock and my 30 acres of land to Mrs. J. A. Lloyd (his sister) as long as she lives and at her death the income to go to . . . J. S. Tuffree . . ."; that by a decree of distribution in his estate dated in 1912, there was distributed to Mrs. Lloyd the described land, for life, the remainder to vest in defendant Tuffree; that in a proceeding dated March 5, 1948, under section 1190 of the Probate Code, it was decreed that title to said *real property* vested in Charles Tuffree; that subsequently, plaintiff was appointed administrator of his mother's estate; that the trustee collected all income from said property except the amount herein involved; that it charged the estate with $1,894.25 for money it spent in raising and growing a crop up until the time of Mrs. Lloyd's death; that thereafter, neither the trustee nor plaintiff administrator, in any capacity, spent any time or money on the crops or in relation to the property; that after Mrs. Lloyd's death plaintiff advised defendant Tuffree that the care of the orchard was defendant Tuffree's obligation "thenceforth"; and that Tuffree then entered upon the premises and spent money and time in bringing the crop to healthy maturity in order that it might be harvested.

As to the facts found there is little dispute. It is sufficient to say the evidence fully supports the findings above mentioned. The main objection is that the findings do not support the conclusion reached therefrom and the judgment resulting. The court concluded that the will explained the decree of distribution in the Charles P. Tuffree estate and did not impeach it; that the will bars plaintiff administrator from claiming the *income* from the property after the death of Mrs. Lloyd; that since the 1947-48 crop of oranges did not become *income* until after her death, plaintiff was not entitled to such income, and that defendant Tuffree was entitled to all funds derived from the sale of that crop, subject to the payment by the said defendant to the administrator of the charges of $1,894.25 made against the estate by the trustee in growing and caring for the crop prior to Mrs. Lloyd's death. Judgment was entered accordingly.

It should be here noted that the will provides that the deceased leaves "30 acres of land" to Mrs. Lloyd, as long as she lives and at her death the *"income* to go to" Tuffree.

The decree of distribution does not specifically mention the income from the property, but distributes "said property both real and personal" to her for life, and the remainder shall vest in Tuffree upon the termination of the life estate.

It is first argued that the terms of the will of Charles P. Tuffree, deceased, could not be considered in determining the intent of the testator in reference to the *income* of the property even though the statement therein, in this respect, was not in accord with the language of the decree of distribution; that such decree is conclusive as to the rights of all devisees under the will, and that the terms of the will cannot be used to impeach the terms of the decree, citing section 1021 of the Probate Code and such cases as *Luscomb* v. *Fintzelberg,* 162 Cal. 433, 438 [123 P. 247]; and *Estate of Gardiner,* 45 Cal. App.2d 559 [114 P.2d 643]. This general statement is true as a proposition of law. ■ While the will cannot be looked to in order to impeach a decree of distribution, once a decree has become final, it is the law that if a decree is uncertain, vague or ambiguous, the will may be used to resolve such uncertainty or ambiguity. (*Estate of Wallace,* 98 Cal.App. 2d 285, 288 [219 P.2d 910]; *In re Ewer,* 177 Cal. 660, 662 [171 P. 683].)

■ The general rule is stated in 22 California Jurisprudence, pages 811-812, section 15, to be that at the termination of the primary or preceding estate, the taker of the future estate becomes entitled to possession and enjoyment of the property, in accordance with the terms of the instrument by which it is created or limited. ■ Unless a contrary intention is expressed by the deed or will, all such profits and produce as are within the definition of "emblements" pass to the representatives of the life tenant.

Where the taker of the primary estate is entitled to the income of property, it is sometimes a difficult question to determine whether certain funds belong to him or to the remainderman. No subject has been more prolific of controversy or productive of more divergent judicial opinions than that of the distribution of revenue of trust property between the parties entitled to the income and the corpus of the estate. (*Estate of Gartenlaub,* 185 Cal. 375, 379 [197 P. 90, 24 A.L.R. 1].)

In 31 Corpus Juris Secundum, page 47, section 40, it is said: "A tenant for life, or his legal representative, is entitled to emblements, that is, the crops planted by him prior to the termination of the life estate, in all cases where

the life estate is terminated by the act of God, as by the death of the tenant, . . ." and "The right to emblements carries with it a right of ingress and egress to preserve the crop and gather it and carry it away." It is likewise stated (§ 41) that "In general a life tenant is entitled to everything in the nature of income or profits accruing during the continuance of the life estate," in the absence of any limitation or restriction thereof, and at his death it passes to his representative.

Plaintiff cites Lord Coke [1 Co. Litt. 55b], as stating that under the common law, the estate of a life tenant sowing a crop and dying before its maturity was entitled to the crop under the doctrine of right of emblements, which allowed one who held agricultural lands for an uncertain period, upon its termination, to harvest and take therefrom any annual crop which he had sown prior to such termination. The reason for the rule thus stated is set forth by Blackstone (2 Blackstone's Com. 122, 1 Cooley's ed. p. 528) under the theory that the representatives of the tenant for life shall have the emblements to compensate for the labor and expenses of tilling, manuring, and sowing of the lands; and also for the encouragement of husbandry which, being a public benefit, tending to increase the provisions, ought to have the utmost security and benefit the law can give it.

At common law annual crops did not include fruit grown on trees. (See Restatement of the Law of Property, § 121f, p. 382.) It is plaintiff's position that the common-law rule has been modified pertaining to fruit grown on trees because, for income tax purposes, where citrus groves are sold with fruit on the trees, a portion of the sales price must be allocated to the fruit and the balance to the land and trees; that gain from the sale of the fruit constitutes ordinary income; that a crop of oranges is separate and distinct from the real property on which it is produced; and that under the decisions in *Blaeholder* v. *Guthrie,* 17 Cal.App. 297 [119 P. 524]; and *Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.,* 32 Cal.App. 347 [162 P. 914], fruit has been said to be within the rule as to emblements. (See, also, *California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546 [165 P.2d 917]; *Story* v. *Christin,* 14 Cal. 2d 592, 595 [95 P.2d 925, 125 A.L.R. 1402].)

In *Blaeholder* v. *Guthrie,* 17 Cal.App. 297 [119 P. 524], an orange and walnut crop grown during the period the life tenant was alive was held to be governed by the doctrine of emblements, but in that case all work had been done upon

the crop for that year, the fruit had *matured* and was ready to pick at the time of the death of the life tenant.

In *Smith* v. *Baker,* 95 Cal.App.2d 877 [214 P.2d 94], this court held that growing crops (lettuce) are subject to absolute sale and are subject to reservation on the sale of the land and if it be intended that such growing crops were to be forfeited on expiration of the leasehold period it must affirmatively appear that such a forfeiture was clearly intended.

If the doctrine of emblements were applied to fruit on trees, under all conditions, a life tenant's estate would have a claim from the moment the fruit is set, even though the fruit did not mature and was not picked until 14 or 15 months after the death of the life tenant and even though all labor had been performed by the remainderman.

According to some authorities, intention has been declared the criterion in deciding whether fruit of trees and perennial roots should be included within the doctrine of emblements, and it has been held that if the trees, bushes or vines require only one planting and will bear successive annual crops, the produce goes to the betterment of the land and will be classed with *fructus naturales,* and the right of emblements will not attach. (*Sparrow* v. *Pond,* 49 Minn. 412 [52 N.W. 36; 32 Am. St.Rep. 571, 16 L.R.A. 103] ; 15 Am.Jur. § 4, p. 198.)

In the situations where the application of the doctrine of emblements is sought to be applied to fruit grown on trees the cases have not drawn an exact line of demarcation as to where the doctrine will apply. It was held in *Blaeholder* v. *Guthrie, supra,* that if the fruit is mature at the termination of the estate, the doctrine should be applied.

In the instant case, regardless of the nature of the growing crop on the trees and whether the doctrine here applies, another rule comes into consideration, i. e., the intention expressed in the instrument creating the life estate and vesting the remaining interest in the remainderman. ▇ The rule in this state, as stated in 22 California Jurisprudence, page 812, section 15, is that such a controversy is to be decided with a view to the intention of the grantor or testator as disclosed by the language of the deed or will, interpreted in the light of the circumstances which show the quantum or amount of benefit intended to be conferred upon the life beneficiary and the remainderman, respectively.

▇ Under this rule and the authorities heretofore cited, the trial court was justified in finding that it was the intention of the testator who created the life estate that not only the

"30 acres of land" and its "income" should go to Mrs. Lloyd, as long as she lived, but that upon her death the land, as well as the "income" therefrom, should go to defendant Charles Tuffree. The decree of distribution here involved is not repugnant to this finding. In its several provisions it distributes "A life estate in all of said property . . . to be held by her (Mrs. Lloyd) for and during her natural life. . . . Said estate in remainder shall vest upon the termination of the . . . life estate. . . ." There was no "income" from the property during the year 1947-48 until the mature crop was sold in July and September, 1948. Therefore, under the terms of the will, construed in connection with the decree of distribution, such "income" derived from the crop after its maturity and after the life tenant's death, materialized and came into existence, and accordingly, vested in the remainderman. (125 A.L.R. annotated, 285; see, also, *Wilhoit* v. *Salmon*, 146 Cal. 444 [80 P. 705].) There a grantor reserved a life estate in herself and by deed granted the remainder in certain real property to her son and daughter. The deed contained the clause: "Together with all and singular tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof." After leasing the property the grantor (life tenant) died and the proceeds from the crops growing at the time of her death were claimed as rent by the executor of the grantor's estate as emblements against the grantees. The court there said:

"We must look to it (the deed) to ascertain whether, by its terms, she intended to divest the life estate she reserved of its common-law incident as to emblements. . . . If she saw fit by the terms of her deed to cut off the common-law incidents of a life estate—the right of emblements—by words clearly having that effect and operation, that was her right. And this is what, by the express terms of her deed, she did."

Judgment was then given in favor of the grantee remainderman.

The finding of the trial court in the instant case is fortified by the apparent construction placed upon the terms of the will by the parties themselves. Plaintiff Hubert B. Lloyd had apparently been assisting the bank in the operation of the grove prior to the death of the life tenant, and had been having some difficulty in producing satisfactory income from it. The day of Mrs. Lloyd's funeral plaintiff approached defendant Tuffree and said: "Well, it (the grove) is your baby

now; it has been a headache to me.'' Defendant immediately went into possession, cultivated and cared for the trees and crop, and it was not until some time after the sale of the fruit that any claim was made by plaintiff that the estate was entitled to any portion of the proceeds.

There is some dissension in the briefs between counsel as to whether the cultivation, irrigation, and care of the grove benefited only the trees or whether they benefited only the 1947-48 growing crop. To decide this argument would be like determining which came first, the hen or the egg. The trial court, in the exercise of its general powers, properly held that the crop was benefited by the care given to it by the trustee and that accordingly the estate was entitled to be reimbursed in the sum of $1,894.25 for money paid by it to the trustee for the care of the orchard for the period in question. The findings fully support the conclusions and judgment.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.