LaVerne Heinold, individually and as Copersonal Representative of the Estate of Adolph W. Heinold, deceased, appellant, v. Marilyn Siecke, individually and as Copersonal Representative of the Estate of Adolph W. Heinold, deceased, appellee.

598 N.W. 2d 58

Filed August 6, 1999.    No. S-98-210.

W. Bert Lammli for appellant.

Gary A. Sokolow for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from a judgment of the county court for Stanton County determining that a life tenant's share of certain annual crops which were planted before his death but harvested thereafter were assets of his estate and were not payable to the remainderman. We affirm.

## FACTS

Prior to January 11, 1988, Adolph W. Heinold and his wife, Laura M. Heinold, were the owners in fee of a tract of real estate located in Stanton County, Nebraska. On that date the Heinolds made, executed, and delivered to LaVerne Heinold a warranty deed conveying the real estate in fee, reserving for themselves "the full benefit and use of the above described premises and the rents, issues and profits therefrom for and during their natural lives." The deed conferred the right *"TO HAVE AND TO HOLD the premises above described, together with all the Tenements, Hereditaments and appurtenances thereunto belonging, unto the said* LaVerne R. Heinold." The deed was recorded the same day at the office of the Stanton County register of deeds.

During the existence of the life estate, Adolph Heinold entered into an oral agreement with Matthias Schuetz whereby Schuetz was to farm the property on shares. Pursuant to this agreement, the corn and soybeans produced on the property during the 1996 crop year were to be delivered to a cooperative located at Pilger, Nebraska. At the elevator, the crops were to be split by weight, with Adolph Heinold to receive a 40-percent share and Schuetz to receive a 60-percent share. Laura Heinold predeceased Adolph Heinold, who subsequently died on July 27, 1996, after the crops were planted in May and June of that year but before they were harvested in October, November, and December. The crops were delivered to the elevator and sold. Deposits in the amounts of $7,061.28 and $6,800.30, representing the proceeds of Adolph Heinold's share of the corn and soy-

bean crops, were made to the account of the estate of Adolph Heinold on August 18, 1997.

LaVerne Heinold and Marilyn Siecke, the surviving son and daughter of Adolph Heinold, serve as copersonal representatives of his estate in probate proceedings pending in the county court for Stanton County. They are also the sole devisees under Adolph Heinold's last will and testament. In his representative and personal capacities, LaVerne Heinold filed a petition for declaratory judgment in which he asked the county court to determine, inter alia, that title to the growing corn and soybean crops passed to him under the aforementioned deed upon the death of Adolph Heinold. In her responsive pleading, Siecke denied the allegations and prayed that the court determine the crops to be assets of the estate. Following trial, the county court determined that Adolph Heinold's share of the crops which were growing but unharvested on the date of his death became the property of his estate upon their harvest and that the proceeds from the crops should therefore become part of the distribution of the estate. LaVerne Heinold perfected this appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts.

## ASSIGNMENT OF ERROR

Heinold asserts, restated and summarized, that the county court erred in finding that the proceeds from the sale of the crops belonged to the estate rather than to the remainderman.

## SCOPE OF REVIEW

In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999); *Bentley v. School Dist. No. 025*, 255 Neb. 404, 586 N.W.2d 306 (1998).

Determinations of factual issues in a declaratory judgment action will not be disturbed on appeal unless they are clearly wrong. *Woodmen of the World Life Ins. Soc. v. Yelich*, 250 Neb. 345, 549 N.W.2d 172 (1996).

## ANALYSIS

■ This dispute over ownership of annual crops which are growing but unharvested upon the death of a life tenant involves the common-law doctrine of emblements, which

> "entitles one who holds land for a period subject to termination at a time which he cannot ascertain beforehand to remove from the land after the termination of his tenancy the annual crops or emblements which he has planted thereon prior to such termination, if the termination is brought about without any fault on his part or without any act of his intended to bring about such a result."

*In re Estate of Mischke*, 136 Neb. 875, 879, 287 N.W. 760, 761 (1939), quoting 15 Am. Jur. § 24 (1938). See Annot., 47 A.L.R.3d 784 (1973). The rationale underlying the doctrine was explained in *In re Estate of Mischke*:

> By the common law, "Tenant for life, or his representatives, shall not be prejudiced by any sudden determination of his estate, because such a determination is contingent and uncertain. Therefore if a tenant for his own life sows the lands and dies before harvest, his executors shall have the *emblements* or profits of the crop: for the estate was determined by the *act of God,* and it is a maxim in the law, that *actus Dei nemini facit injuriam* (the act of God injures no man). The representatives, therefore, of the tenant for life shall have the emblements to compensate for the labor and expense of tilling, manuring and sowing the lands; and also for the encouragement of husbandry, which being a public benefit, tending to the increase and plenty of provisions, ought to have the utmost security and privilege that the law can give it."

136 Neb. at 878-79, 287 N.W. at 761, quoting 1 Thomas M. Cooley, Cooley's Blackstone, bk. 2, ch. 8 (James DeWitt Andrews 4th ed.) (1899). The doctrine applies to " 'corn and other crops of the earth which are produced annually, not spontaneously but by labor and industry.' " *In re Estate of Mischke*, 136 Neb. at 879, 287 N.W. at 761, quoting 15 Am. Jur., *supra.*

■ It is generally held that unless the instrument creating the life estate provides otherwise, the doctrine of emblements applies in all situations where annual crops planted by a life ten-

ant in possession of the land are growing before the death of the life tenant. See Annot., 47 A.L.R.3d, *supra.* However, the analysis is more complex when, as in the present case, the life tenant permits a third party to farm the land in exchange for a share of the crops. See, *Finley v. McClure, Administratrix,* 222 Kan. 637, 567 P.2d 851 (1977); Restatement of Property § 121 (1936); Annot., 47 A.L.R.3d, *supra.* In this circumstance, courts vary in their interpretation of whether the doctrine of emblements allows the representative of the deceased life tenant to claim his agreed-upon share of the growing crops. *Finley, supra;* Annot., 47 A.L.R.3d, *supra.*

In *Vawter v. Frame,* 48 Ind. App. 481, 96 N.E. 35 (1911), the court held that a sharecrop arrangement creates a tenancy in common whereby the life tenant owns an undivided interest in the growing crop which passes to his or her estate upon the death of the life tenant. Some courts construe such arrangements as leases in which the crop share constitutes rent which, if payable after the death of the life tenant, belongs to the remainderman. *Simpson v. McCormmach,* 125 Or. App. 603, 866 P.2d 489 (1994); *Williams v. Stander,* 143 Colo. 469, 354 P.2d 492 (1960). Other courts have characterized such arrangements as leases but have nevertheless held that the estate of the life tenant was entitled to his or her share of the crops planted during the life tenant's lifetime but harvested after the life tenant's death. *McCraw v. Simpson,* 141 F.2d 789 (10th Cir. 1944) (applying Oklahoma law); *In re Estate of Luke,* 184 N.W.2d 42 (Iowa 1971). See, also, *Wilhoit v. Salmon,* 146 Cal. 444, 80 P. 705 (1905).

The issue presented herein was addressed by this court in *In re Estate of Mischke,* 136 Neb. 875, 287 N.W. 760 (1939). Henriete Mischke held a life estate in a farm in Adams County. Her children were the remaindermen. Mischke leased the farm to her son Robert for a term of 5 years for a one-third portion of all the crops harvested from the land delivered to the market. In the fall of 1937, Robert planted a wheat crop on the land, which was growing but unharvested at the time of Mischke's death in January 1938. The wheat was harvested in July and delivered and sold to an elevator. The estate brought an action demanding

that the elevator turn over the proceeds from the sale of the wheat crop.

After characterizing the relationship between Mischke and Robert as that of a landlord and tenant, we reasoned:

> A landlord and tenant are tenants in common of growing crops where rent is reserved in a share of the crops. . . .
>
> This court has repeatedly held that growing crops are personal property. . . .
>
> It necessarily follows that the life tenant at the time of her death was the owner of an undivided interest in the wheat then growing on the land, and that such interest was a personal property interest, and title thereto passed to her estate.

(Citations omitted.) *Id.* at 877-78, 287 N.W. at 761. We further reasoned:

> It is clear that the rule of emblements applies where the life tenant sows the land for himself. It applies also to the lessee of the life tenant. The reason upon which the doctrine of emblements is based requires that it be applied likewise to that share of the crop which was reserved to the life tenant as rent.

*Id.* at 879-80, 287 N.W. at 762.

The petition in the present case characterizes the arrangement between Adolph Heinold and Schuetz as "an oral agreement to farm on shares" whereby the former "would pay 40% of row crop expenses, and would receive a 40% share by weight of all row crops grown on the premises . . . ." LaVerne Heinold's testimony at trial was consistent with this characterization. The pertinent facts are therefore similar to those presented in *In re Estate of Mischke, supra,* and the county court's determination was consistent with our holding in that case.

LaVerne Heinold contends, however, that *In re Estate of Mischke, supra,* was impliedly overruled by *In re Estate of Kennedy,* 220 Neb. 212, 369 N.W.2d 63 (1985). We disagree. In *In re Estate of Kennedy,* we held that because the life estate was held in joint tenancy, crops growing on the land were not subject to the claims of creditors but passed with the land to the surviving joint tenant. Where property is held in joint tenancy, each joint tenant owns the whole of the property from the time at

which the interest is created. *Mahlin v. Goc*, 249 Neb. 951, 547 N.W.2d 129 (1996). Property owned in joint tenancy passes by reason of the nature of the title to the surviving joint tenant upon the death of another. *Youngblood v. American Bible Soc.*, 227 Neb. 472, 418 N.W.2d 554 (1988), *abrogated on other grounds, Powell v. American Charter Fed. Sav. & Loan Assn.*, 245 Neb. 551, 514 N.W.2d 326 (1994). In contrast, while the remainderman ultimately succeeds to the possession of the life tenant, he does not succeed to his title, but instead gets his title from another and independent source. He or she takes from the grantor or devisor directly as an estate by purchase, from the time of the death of the life tenant. 31 C.J.S. *Estates* § 32 (1996). Thus, the termination of a life estate by reason of the death of the life tenant does not transfer any property interest to the remainderman. *In re Estate of Glaser*, 217 Neb. 104, 348 N.W.2d 127 (1984). *In re Estate of Kennedy, supra*, is thus distinguishable from the present case on the facts and applicable legal principles and therefore does not overrule *In re Estate of Mischke*, 136 Neb. 875, 287 N.W. 760 (1939).

LaVerne Heinold also argues that *In re Estate of Mischke, supra*, was overruled by *Beacom v. Daley*, 164 Neb. 120, 81 N.W.2d 907 (1957), which held that rents accruing after the death of the life tenant belong to the remainderman. This argument ignores our statement in *Estate of Ruwe v. Ruwe*, 190 Neb. 663, 666, 211 N.W.2d 610, 613 (1973), that "[t]he rule announced in Beacom v. Daley, *supra,* is frequently unsuited for application to rentals of agricultural lands, and insofar as it may conflict with In re Estate of Mischke, *supra,* it is overruled."

LaVerne Heinold further contends that the warranty deed creating the life estate represents an intent on the part of the life tenants for their rights to the crops to terminate upon death. LaVerne Heinold correctly states that a life estate terminates on the date of death of the life tenant. See *In re Estate of Glaser, supra*. He further notes that the language in the deed reserves to the grantors " 'the full benefit and use of the above described premises and the rents, issues and profits therefrom for and during their natural lives.' " Brief for appellant at 2. LaVerne Heinold contends that such language indicates that upon the completion of the natural lives of the grantors, their reservation

of "the rents, issues and profits" thereby was intended to immediately terminate, thus leaving the growing crops to the remainderman.

Although this court has not addressed the issue, other courts have held that certain language in the creating instrument can cut off the right of emblements. For example, in *Wilhoit v. Salmon*, 146 Cal. 444, 445, 80 P. 705 (1905), the owner of land granted a deed conveying it in fee " 'together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.' " The deed was deposited in escrow, to be delivered upon the death of the grantor. The court held that such deed postponed only the possession of the premises by the grantees until the grantor's death and that upon the life tenant's death, her estate had no right to emblements. Similarly, in *Williams v. Stander*, 143 Colo. 469, 471, 354 P.2d 492, 494 (1960), an agreement providing that "upon the decease of First Party, all of the rents, profits and all income whatsoever from said land, shall, thereupon, become the exclusive property of Second Parties or the survivor of them" was found to abrogate any right the estate had to emblements. The language in the warranty deed applicable to the present facts contains no similar language, and, assuming without deciding that certain language in the creating instrument can cut off the life tenant's right to emblements, the deed before us here does not demonstrate an intention on the part of the grantors to relinquish such right.

Lastly, LaVerne Heinold contends that the Nebraska Principal and Income Act, Neb. Rev. Stat. §§ 30-3101 to 30-3115 (Reissue 1995), applies to the present facts and that under such act, the income from the growing crops properly belongs to the remainderman. The act provides that it governs "the ascertainment of income and principal and the apportionment of receipts and expenditures in trusts and decedents' estates, to the extent not inconsistent with the provisions of a creating instrument." § 30-3101. As the county court correctly held, the act does not apply to the present facts. The "creating instrument" at issue here is the warranty deed creating the life estate, and it is those

provisions of law pertaining to this type of estate that apply, not those applicable to decedents' estates and trusts.

## CONCLUSION

Because the corn and soybean crops at issue were planted during the existence of Adolph Heinold's life estate and harvested after his death, the doctrine of emblements requires that the proceeds of his reserved share of the crops be treated as property of his estate. The judgment of the county court therefore is affirmed.

AFFIRMED.